No. 03-4534
File Name: 05a0408n.06
Filed: May 17, 2005

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Paten Yusif,

    Petitioner,

v.

John Ashcroft,

    Respondent.

ON PETITION FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS

Before: Daughtrey and Clay, Circuit Judges; Graham, District Judge[1]

**OPINION**

Graham, District Judge.

Petitioner seeks review of a decision of the Board of Immigration Appeals that affirms the denial of asylum and withholding of removal.

Petitioner is a 21-year-old native citizen of Iraq. He is a member of the Chaldean community and attended the Chaldean Catholic Church in Iraq. Petitioner has about six-and-a-half years of education, roughly equivalent to a seventh grade education in the United States. Petitioner testified that he left school in 1995 to work in his family liquor business. He and his cousin (who

---

[1]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

previously petitioned for asylum) were in the business on October 7, 1999, when "intelligence" officers came in and began beating and insulting them. The officers took petitioner away in a car with a hood over his head and did not tell him where they were taking him. He was taken to a place that he could not identify and held in a small room. Petitioner stated that the cramped conditions required that he squat on the floor sitting on his buttocks, with his knees pulled up to his chest.

After two weeks, petitioner was taken into another room where officers demanded that he sign a document ceding the liquor business to the government. Petitioner testified that he did not sign the document and was held for two months and three days. He further testified that although he was not beaten, he was often taken into another dark room where he was held naked and splashed with cold water. Petitioner was detained until he signed a document ceding the liquor business to the government.

Petitioner testified that the officers warned him not to tell anyone about his detention or they would kill him. Petitioner returned to his hometown and told his family and friends about the experience once he was released. Petitioner discovered that a new building was built around the family business. Petitioner testified that he decided to leave Iraq and paid $1,000 for an Iraqi passport. Petitioner traveled to Jordan with his cousin, who was also released, and then to Thailand, and then to China. From

China, they came to the United States. Petitioner arrived in the United States on November 8, 2000, using a fraudulent Belgian passport and seeking admission pursuant to the Visa Waiver Program. He requested asylum at the airport, which was denied by an Immigration Officer and was referred to an immigration judge for a hearing.

Petitioner appeared before an immigration judge in Lancaster, California, on December 5, 2000. Petitioner's case was subsequently transferred to Detroit, Michigan. Petitioner appeared for his asylum hearing in Michigan on March 28, 2002. At the beginning of the hearing, petitioner's counsel suggested that he expected a Chaldean interpreter. The immigration judge stated, however, that petitioner had always indicated a preference for Arabic. Petitioner's cousin did not attend petitioner's proceedings because he was also involved in immigration proceedings. Petitioner's aunt, Mrs. Faiza Putris, did testify at petitioner's hearing. She testified that she was a Chaldean Catholic who lived in Iraq before coming to the United States and that she intended to return to Iraq. Mrs. Putris further testified that the Iraqi government agreed to allow petitioner to leave Iraq if he transferred the liquor business to the government

At the end of the hearing, the immigration judge rendered an oral decision on March 28, 2002. The judge noted that petitioner had gone over the asylum application documents line by line with an

interpreter who speaks the Chaldean language. Petitioner said there were no more changes to the applications. The judge explained that petitioner had the burdens of proof and persuasion and that he was denying petitioner's claim because petitioner was not credible. The judge stated that even if petitioner had presented a credible claim, he did not establish that any harm he suffered was a result of one of the protected statutory reasons.

The immigration judge reviewed the documentary evidence. The petitioner's "naturalization certificate," which indicates that petitioner is from Iraq, raised some credibility concerns. The certificate issued by the government of Iraq was dated only seven days after he claimed to have been released from detention. The judge found it odd that even though the Iraqi authorities allegedly detained petitioner for months, they had no problem issuing him the certificate shortly after his detention. In addition, although the naturalization certificate stated that petitioner had no distinguishing characteristics, the judge noted for the record that petitioner in fact had scars and distinguishing features all over his face. The document was not signed and there was no fingerprint. The immigration judge found that all of these issues raised questions concerning petitioner's credibility and identity.

The judge also noted that the 2001 Country Reports issued by the United States State Department in March 2002, which detailed Saddam Hussein's mistreatment of Chaldeans, were not relevant

4

because petitioner did not claim he was persecuted on that basis. Instead, petitioner's claim was purely personal and financial, pertaining to the family liquor business. The judge also reviewed other documents submitted by the petitioner, which he also found unpersuasive and which undermined petitioner's claim. Thus, the immigration judge denied petitioner's application because he was not credible, and because the alleged harm petitioner suffered was not a matter covered by the asylum statute.

On October 27, 2003, the Board of Immigration Appeals affirmed the decision of the immigration judge without opinion.

## Discussion

In reviewing the factual determinations of petitioner's statutory ineligibility for asylum or withholding of removal, the court must uphold the Board's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Mikhailevitch v. INS, 146 F.3d 384, 388. (6th Cir. 1998) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 117 L. Ed. 2d 38, 112 S.Ct. 812 (1992)). This standard is deferential and the court may not reverse the Board's determination simply because the court would have reached a different conclusion. Id. "The appropriate inquiry is whether the applicable evidence 'was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.'" Id. (quoting Elias-Zacarias, 502 U.S. at 481.

5

Petitioner argues that he was assigned a translator who could not speak his native language or his Arabic dialect. According to petitioner, the translator could only communicate with him in classical Arabic, a language which is only learned in school and has no native speakers. Petitioner argues that because he had only six-and-a-half years of education, his answers to the translator repeatedly reflected a misunderstanding of the questions. Petitioner argues that the instances where the judge held petitioner's testimony incredible were either because the judge misinterpreted the testimony or because petitioner misunderstood the questions due to the inadequate translation.

Petitioner argues further that the immigration judge also erred when he stated that even if everything petitioner testified to was true, petitioner still has no basis for relief under the asylum laws. Petitioner alleges that he feared retaliation by the Iraqi security agencies for telling family and friends what had occurred to him while in custody. Petitioner argues that even if retaliation by the Iraqi forces is not political, it is evidence that petitioner is likely to be subject to torture upon return to Iraq.

Petitioner's arguments miss the mark. In order to establish a claim for asylum, an alien must qualify as a "refugee" under the Immigration and Nationality Act ("the Act" or "INA"). Mickhailevitch v. INS, 146 F.3d 384, 389 (6th Cir. 1998); Perkovic

6

v. INS, 33 F.3d 615, 620 (6th Cir. 1994). The Sixth Circuit defines a refugee "as a person unable or unwilling to return to his country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Perkovic, 33 F.3d at 620 (quoting 8 U.S.C. § 1101(a)(42)(A)).

As the applicant seeking asylum, petitioner bears the burden of proof of establishing eligibility for asylum as a refugee "either because he has suffered actual past persecution or because he has a well-founded fear of future persecution." See 8 C.F.R. § 208.13; Mikhailevitch, 146 F.3d at 389. "An applicant's fear of persecution must be both subjectively genuine and objectively reasonable." Mikhailevitch, 146 F.3d at 389. Thus, the objective fear must be based in reality because "[m]ere irrational apprehension is not enough[.]" Cuadras v. INS, 910 F.2d 567, 571 (9th Cir. 1990). Petitioner's alleged fear of persecution must be "on account of" the Act's protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. Sale v. Haitian Ctrs. Council, 509 U.S. 155, 162 (1993).

Unlike asylum, withholding of removal prohibits the Attorney General from removing "an alien to a country where his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3).

7

"The alien must demonstrate a 'clear probability of persecution' with 'objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation.'" Kapcia v. INS, 944 f.2d 702, 709 (10th Cir. 1991) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 425 (1987)).

Here, the immigration judge concluded that the alleged harm about which petitioner complained was not covered by the asylum statute because petitioner did not establish past persecution or a well-founded fear of future persecution "on account of" a protected ground under the Act. This conclusion is supported by substantial evidence. Petitioner alleges that he was taken into custody and physically mistreated for weeks, but he does not demonstrate that this treatment was on account of his race, religion, nationality, membership in a particular social group, or political opinion.

Instead, petitioner complains about extortion, that the officers would not release him until he signed over his family's liquor business. However, petitioner fails to connect this action with any protected ground. "Such ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum[.]" Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001); see also Singh v. INS, 103 F.3d 1482, 1487 (9th Cir. 1997) ("Persecution on account of political opinion can no longer be inferred merely from acts of random violence. . . .").

Similarly, petitioner complains about the unstable climate in

his country, but an applicant for asylum may not establish persecution simply because of the applicant's country's conditions or civil wars.  See, e.g., Perkovic v. INS, 33 F.3d 615, 621 (6th Cir. 1994); Marquez v. INS, 105 F.3d 374, 381 (7th Cir. 1997) (noting that "[c]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum") (quoting Gonzalez v. INS, 77 F.3d 1015, 1021 (7th Cir. 1996)).  Petitioner's alleged fear of returning to Iraq is also undermined by his aunt's testimony.

The immigration judge's conclusion that petitioner was not credible was also supported by substantial evidence.  Adverse credibility findings are "considered findings of fact, and are reviewed under the substantial evidence standard." Sylla v. I.N.S., 388 F.3d 924, 925 (6th Cir. 2004).  Here, the immigration judge considered several contradictions and inconsistencies in petitioner's claim.  Petitioner merely asserts that these can be explained away by an untimely assertion that petitioner did not understand the interpreter.  This assertion, however, is insufficient to compel this court to disturb the findings of the immigration judge.  Klawitter v. INS, 970 F.2d 149, 152 (6th Cir. 1992) (stating that the court must find evidence that *compels* it to reverse the Board's findings).  However, even if the court concluded that the immigration judge erred on this issue, and that everything petitioner said was true, petitioner's claim for asylum

9

still fails because he still has not established that he was a refugee entitled to protection under the Act.

Finally, petitioner also asserts a claim for withholding of removal under the Convention Against Torture.  Under the Convention Against Torture, petitioner must establish that it is more likely than not that he will be tortured in the proposed country of removal, but he need not show that he will be tortured on account of a protected ground.  See 8 C.F.R. § 208.16(c)(2); Castellano-Chacon v. I.N.S., 341 F.3d 533, 551-52 (6th Cir. 2003).

The immigration judge found that petitioner's claim for withholding of removal under the Convention Against Torture failed because his testimony lacked credibility.  The record clearly supports his finding.

## Conclusion

For the foregoing reasons, the petition for review is denied.