**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0024n.06

**No. 08-3899**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|                                              |     |                                    |
| -------------------------------------------- | --- | ---------------------------------- |
| PATEN R. YUSIF,                              | )   |                                    |
|                                              | )   |                                    |
|     Petitioner-Appellant, | )   |                                    |
|                                              | )   |                                    |
|     v.                    | )   | ON PETITION FOR REVIEW             |
|                                              | )   | FROM THE BOARD OF                  |
| ERIC H. HOLDER, JR.,                         | )   | IMMIGRATION APPEALS                |
|                                              | )   |                                    |
|     Respondent-Appellee.  | )   |                                    |
|                                              | )   |                                    |

**FILED**
**Jan 13, 2010**
LEONARD GREEN, Clerk

BEFORE: KENNEDY, COLE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Paten R. Yusif seeks review of the Board of Immigration Appeals' (BIA) denial of his second motion to reopen his removal proceedings based on changed country conditions in Iraq. For the reasons that follow, we deny the petition for review and affirm the BIA's decision.

I.

Yusif is a native and citizen of Iraq and a Chaldean Christian. In November 2000, he entered the United States at the Los Angeles International Airport "using a presumably [] fake Belgian passport" and seeking admission pursuant to the Visa Waiver Program. An immigration officer stationed at the airport denied Yusif's request for asylum and referred his claim to an Immigration Judge (IJ).

On March 28, 2002, the IJ conducted a hearing on the merits of Yusif's asylum application. In relevant part, Yusif testified that in October 1999, he was working in a wholesale liquor store that he co-owned with his father when Iraqi intelligence officers entered the shop and asked him for identification. After the Iraqi officers "beat[] . . . and insult[ed]" Yusif and his cousin, they snatched and blindfolded the men and drove them to an unknown destination just outside of Baghdad. There, the officers tried to coerce Yusif into signing a document that relinquished his ownership rights in the liquor store. When Yusif refused, they placed him in a one meter cell without clothing, where he was forced to sit on the floor, "knees pulled to his chest, [with] his arms grasping his legs." Officers intermittently removed Yusif from his cell, splashed him with cold water, and repeatedly asked him to sign the document. After three months and ten days, Yusif finally agreed to sign it, and he was released. Yusif returned to his liquor store, but it was occupied by the police.

Yusif told his family and friends about his captivity, despite warnings from his captors to remain silent after his release. Soon thereafter, a friend warned Yusif to "leave his home" because Iraqi "intelligence" had "heard" that he was discussing his imprisonment. Yusif testified that he decided to flee Iraq because his captors "said to [him] before [he] went out of the prison whatever happened to [him] should not be repeated. And, and if [he] t[old] anyone, [he] w[ould] be finished. [He would] be dead."

The IJ denied Yusif's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] In his oral opinion, the IJ found that Yusif was "an

---

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, U.N. GAOR 39th Sess., Supp. No.

inherently incredible person" and specifically denied his application on that basis. The IJ also noted that Yusif had not testified that his mistreatment in Iraq was based upon his status as a Chaldean Christian or any anti-government position against the ruling Ba'ath party; thus, his unwillingness to return to Iraq was not based upon a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."[2]  *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).

On October 27, 2003, the BIA affirmed the IJ's decision in a summary order.  In a previous appeal, we agreed and affirmed the BIA's decision, stating that "petitioner['s] complain[ts] about extortion, [i.e.,] that the officers would not release him until he signed over his family's liquor business . . . . fails to connect th[eir] action with any protected ground." *Yusif v. Ashcroft*, 130 F. App'x 797, 802 (6th Cir. 2005) (unpublished).

Four years later, Yusif filed a motion to reopen his removal proceedings.  The BIA dismissed his petition as untimely and rejected his claim that changed country conditions in Iraq excused his untimeliness.  Specifically, the BIA stated:

---

51 at 197, U.N. Doc. A/39/51 (1984); *see also* implementing regulations at 8 C.F.R. § 208.18.

[2]In this regard, the IJ's finding is supported by Yusif's statement to the airport immigration official that he fled Iraq because he "use[d] to have a big place that sold alcohol in big quantities. Then the government took over."  When asked if this were the reason he left Iraq, he responded that "[t]he main reason is because after [they took over the store], they would give us a hard time." *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 162 n.11 (1993) (holding that a petitioner's unwillingness to return must be based upon "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . . ").

> The Immigration Judge concluded, and we agreed, that the applicant's overwhelming problems with his credibility warranted the denial of his application for relief. The evidence submitted with the motion does not render the applicant's claim credible. There are no statements from the applicant's family in Iraq, who allegedly are also Chaldean Christians, concerning the family's situation and experiences in Iraq. The lack of such evidence is significant. We note that the applicant's aunt, a Chaldean Christian, testified at his hearing, but she was in the United States legally and was planning on returning to Iraq. In any event, if the applicant is to be believed, his complaints primarily involve the confiscation of a commercial enterprise, a liquor store, during the time of Saddam Hussein's government, which has since been removed.

(Citation omitted.) The record does not reveal whether Yusif appealed this decision.

On March 5, 2008, Yusif filed a second motion to reopen based on changed country conditions in Iraq, the denial of which is the subject of this appeal. In a written opinion, the BIA denied Yusif's motion because he failed to demonstrate that changed country conditions in Iraq warranted reopening his case. The BIA explained:

> [A]pplicant's original asylum claim was based on a fear of retribution from the Saddam Hussein-led government as a result of disclosing to his family members the circumstances surrounding his incarceration, mistreatment, and forced relinquishment of a family-owned liquor store at the hands of government agents. The Immigration Judge even noted that the applicant never indicated that his mistreatment in Iraq was due to his Chaldean Christian background or his perceived anti-government position against the ruling Ba'ath party. The applicant's prior and current motions to reopen are apparently based on his new source of fear, which is the current Iraqi insurgency.

(Citations omitted.) Next, the BIA ruled that Yusif "ha[d] not shown that he will be singled out individually for persecution or that a pattern or practice of persecution exists for similarly situated Iraqi nationals." Finally, the BIA noted that Yusif's application was "barred [] by the time and numerical limitations governing motions to reopen."

This timely appeal followed.

II.

Yusif appeals the BIA's denial of his second motion to reopen. "The decision to grant or deny a motion to reopen . . . is within the discretion of the [BIA]," 8 C.F.R. § 1003.2(a), and our review is for an abuse of discretion. *Guo Ping Wu v. Holder,* 339 F. App'x 596, 599 (6th Cir. 2009) (unpublished). The Supreme Court has made clear that the BIA retains broad discretion to deny such motions. *INS v. Doherty*, 502 U.S. 314, 323 (1992).[3] The Court has also stated that a motion to reopen is analogous to a "motion for a new trial in a criminal case on the basis of newly discovered evidence, as to which courts have uniformly held that the moving party bears a heavy burden." *I.N.S. v. Abudu,* 485 U.S. 94, 110 (1988).

---

[3]A quick note about our jurisdiction is warranted. As amended by the Real ID Act of 2005, the Immigration and Nationality Act strips federal courts of jurisdiction to review discretionary decisions of immigration officials. Section 242(a)(2)(B)(ii) of the Act, 8 U.S.C. § 1252(a)(2)(B)(ii), provides that "no court shall have jurisdiction to review . . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Section 1158(a) governs asylum applications. We previously have reviewed the BIA's denial of a reconsideration motion without considering whether it is committed to the Attorney General's "discretion" and thus subject to the jurisdiction-stripping provision. *See, e.g.*, *Sanusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007). The Seventh Circuit held recently that §1252 effectively eliminates appellate jurisdiction over denials of motions to reopen. *See Kucana v. Mukasey*, 533 F.3d 534, 538 (7th Cir. 2008). The Supreme Court has granted review of *Kucana*. *Kucana v. Holder*, 129 S. Ct. 2075 (2009) (No. 08-911). However, neither party in the present case has argued that § 1252(a)(2)(B)(ii) applies to motions to reopen, and the current law binding this panel provides that we have jurisdiction to review the BIA's denial of Yusif's motion to reopen. *Alizoti v. Gonzales*, 477 F.3d 448, 451-52 (6th Cir. 2007). For these reasons, we consider the merits of his petition.

We have explained that the BIA abuses its discretion if its denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Alizoti v. Gonzales*, 477 F.3d 448, 453 (6th Cir. 2007) (internal quotation marks and citation omitted). The BIA will deny a motion to reopen if the movant cannot establish a prima facie showing of eligibility for the underlying requested relief. *Id.* at 451-52. In short, Yusif must show that there is a "reasonable likelihood" if his case is reopened, that he will be able to establish that changed country conditions in Iraq have caused him to have "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" and that the evidence supporting his motion "was not available and would not have been discovered or presented at the previous proceeding." *Id.* at 452 (citation and quotation marks omitted); 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).

Because Yusif's motion is time-barred under 8 U.S.C. § 1229a(c)(7)(C)(i), which requires an asylum applicant to file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal[,]" he was required to demonstrate a "reasonable likelihood" that he could establish materially changed country conditions in Iraq between the IJ's 2002 denial of his asylum application and his 2008 motion to reopen. The BIA concluded that Yusif's evidence did not satisfy the "heavy burden" articulated in *Doherty* because he "never indicated [during his 2002 testimony] that his mistreatment in Iraq was due to his Chaldean Christian background or his perceived anti-government position against the ruling Ba'ath party." (Citation omitted.) Moreover,

evidence regarding his status as a Chaldean Christian in Iraq was relevant to his asylum petition and "was . . . available and . . . discover[able]" and should have been "presented [at] [his] previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). As the BIA aptly noted, Yusif's "new source of fear," namely, the Iraqi insurgency, "does not compel the conclusion that [Yusif's] situation upon [his] return to [Iraq] will be any different from the dangers faced by other citizens of that war-torn country." *Sanchez-Trujillo v. I.N.S.*, 801 F.2d 1571, 1581 (9th Cir. 1986) (cited in *Castellano-Chacon v. I.N.S.,* 341 F.3d 533, 546 (6th Cir. 2003)). In addition, the determination of current conditions in a particular country is within the purview of the BIA. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002). Thus, we will only overturn such a determination if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Simply put, the record in this case does not compel a contrary result.

The BIA did not abuse its discretion because its denial of Yusif's second motion to reopen was "made with[] a rational explanation." *Alizoti*, 477 F.3d at 453 (citation and quotation marks omitted). In addition, its opinion was neither an "inexplicabl[e] depart[ure] from established policies" nor did it "rest[] [up]on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* For these reasons, we deny Yusif's petition for review and affirm the BIA's decision.