NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0502n.06

No. 09-3709

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 13, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MOSHEN SALEH AYYAD, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., UNITED STATES | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: GUY and GRIFFIN, Circuit Judges; and WILHOIT, District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner Moshen Saleh Ayyad seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the reasons that follow, we affirm the BIA's decision and deny Ayyad's petition for review.

I.

Ayyad, a Palestinian born in Ramallah, Israel, was admitted to the United States on May 17, 2004, pursuant to a temporary non-immigrant visitor visa. Soon after his visa expired, Ayyad filed

---

[*]The Honorable Henry R. Wilhoit, Jr., Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

an application for asylum and withholding of removal. He was granted an asylum interview, but he failed to attend. Thereafter, the Department of Homeland Security ("DHS") served him with a notice to appear ("NTA"), charging him with removability under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). Ayyad admitted the factual allegations in his NTA, conceded his removability as charged, and, through counsel, filed an amended application for asylum and withholding of removal based on his Palestinian ethnicity and political opinion, as well as for protection under the CAT.

On September 13, 2007, an IJ conducted a hearing on the merits of Ayyad's claims for relief. Ayyad asserted that before he came to the United States, Israeli authorities had persecuted him because of his Palestinian ethnicity, and, if forced to return, he would encounter persecution from both Israeli and Palestinian intelligence officials, as well as Hamas, a Palestinian Islamic organization.[1]

---

[1]Ayyad testified to the following events: In 1987, Ayyad participated in the First Intifada, a Palestinian uprising which lasted approximately five years. During this time, he threw stones at Israeli soldiers and was arrested four times, shot twice, and imprisoned for sixteen months. He joined the Palestinian Youth Movement ("PYM") during the Second Intifada in 2000, where he trained and recruited local youths to throw stones at Israeli soldiers. He later left the PYM (without incident) when his supervisor asked him to train members to use weapons. Israeli intelligence approached Ayyad in 2003 for information about the PYM. He refused to cooperate. After this encounter, border agents blocked Ayyad from passing certain security check-points. In March 2004, Ayyad's friend delivered a letter from the PYM ordering Ayyad to return to the organization. After he refused to re-join, Ayyad was present in a barbershop when gunfire shattered the shop's glass door, and a bomb exploded near his home. Following these incidents, Ayyad decided to leave Israel for the United States. Once he arrived in America, Ayyad's father informed him that he thought Hamas was trying to kill him.

During his cross-examination, Ayyad admitted that: (1) he was no longer "wanted" by Israeli intelligence; (2) Palestinian intelligence was no longer looking for him; (3) even if Palestinian intelligence were looking for him in Palestine, it was based on his "rude[ness]" to one of their "leader[s]" in April 2004; and (4) he was unable to provide a letter from his father verifying the Hamas threat because he only communicated with his father over the telephone.

Immediately following the hearing, the IJ entered an oral decision denying Ayyad's requests for asylum, withholding of removal, and CAT protection. The IJ found that Ayyad was, in large part, not a credible witness because he had exaggerated certain critical events during his testimony, as evidenced by his admissions during cross-examination, as well as certain inconsistencies contained in his original and amended asylum applications.

On May 27, 2009, the BIA dismissed Ayyad's appeal. Despite accepting the credibility of his testimony, the BIA ruled that he had failed to establish a well-founded fear of future persecution from: (1) Israeli authorities because he admitted that Israeli intelligence was no longer looking for him; (2) Palestinian authorities because his rudeness to a Palestinian officer was not a protected ground upon which he could seek relief; and (3) Hamas because his fear was based solely on his father's statements, which remained uncorroborated. Finally, the BIA concluded that the letter from PYM was insufficient to establish his past persecution.

Ayyad timely filed the pending petition for review.

II.

Ayyad argues that we should vacate the BIA's denial of his requests for asylum, withholding of removal, and CAT protection, remand for further proceedings, and stay his deportation. "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination. To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted). Because the BIA analyzed Ayyad's claims on the assumption that his testimony was credible, we will do so as well. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010).

We review questions of law de novo and factual findings under the "substantial-evidence standard." *Khalili*, 557 F.3d at 435. Under this test, factual findings must be sustained if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted). The findings "are conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B) (emphasis added). In other words, "[w]e cannot reverse such findings simply because we would have decided them differently." *Khalili*, 557 F.3d at 435.

An alien seeking asylum must establish that he is a "refugee," which is defined as one who is "unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion[.]" 8 U.S.C. §§ 1158(b)(1)(B)(i) & 1101(a)(42)(A). "A well-founded fear of persecution . . . has both a subjective and an objective component: an [applicant] must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citation omitted). To meet this requirement, the applicant need not "show that he probably will be persecuted if he is deported; 'one can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" *Id.* at 950-51 (citations omitted). If the applicant establishes past persecution, it is presumed that his life or freedom will be threatened in the future. 8 C.F.R. § 208.16(b)(1)(i).

To qualify for withholding of removal, an applicant must demonstrate "a clear probability that [his] life or freedom would be threatened in [the] country [to which he would be removed] on account of race, religion, nationality, membership in a particular social group, or political opinion." *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004). Because this standard is more stringent than the standard applicable to asylum claims, an applicant who fails to establish that he is a "refugee" eligible for asylum will necessarily fail to qualify for withholding of removal. *Id.*

Under the CAT, removal must be withheld if "it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Unlike asylum and withholding of removal, no protected-ground nexus is required to obtain relief under the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006).

III.

As a preliminary matter, we need not address Ayyad's arguments challenging the IJ's credibility determinations because the BIA accepted the credibility of his testimony when it reviewed his claims. *See Bonilla-Morales*, 607 F.3d at 1136. In addition, he has abandoned his claim for protection under the CAT. *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 321 (6th Cir. 2010) (internal quotation marks and citation omitted) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Ayyad asserts that the BIA erred in concluding that he failed to satisfy his burden of establishing past persecution by Israeli authorities based on his Palestinian ethnicity. Indeed, an applicant who satisfies his burden of establishing past persecution is presumed to have a well-founded fear of persecution. *See* 8 C.F.R. § 208.16(b)(1)(i). Ayyad argues that his four arrests, period of imprisonment, gunshot injuries, and problems crossing the border sufficiently establish his past persecution. As the BIA noted in its opinion, however, Ayyad effectively "rejected his claimed fear of the Israeli authorities" during his cross-examination, "testifying that he did not think that the Israeli authorities or intelligence were looking for him." Thus, evidence of any past episodes of persecution was of limited relevance because Ayyad admitted that he did not fear any future persecution by the Israeli government.[2] *See* 8 C.F.R. 1208.13(b)(1)(i)(A) (presumption created by

---

[2]Although it is possible for a petitioner to receive a discretionary grant of asylum based upon past persecution alone, he must make a "minimum showing of atrocity[.]" *Neli,* 85 F. App'x at 438 (internal quotation marks and citation omitted); *see, e.g., Bucur v. INS*, 109 F.3d 399, 405 (7th Cir. 1997) (internal citation omitted) (holding that the granting of asylum on the basis of past persecution

past persecution rebutted when change in circumstances demonstrates applicant "no longer has a well-founded fear of persecution"). Based on Ayyad's testimony and the record evidence as a whole, Ayyad did not establish a well-founded fear of the Israeli authorities based on past persecution.

Moreover, Ayyad admitted that his arrests, beatings, and period of imprisonment were the direct consequence of his throwing rocks at Israeli soldiers. Although there is no record evidence that Ayyad's rock-throwing was illegal, it does suggest that Israeli authorities may have had a different motivation to arrest, beat, and imprison him, separate and apart from his Palestinian ethnicity. *See Bonilla-Morales*, 607 F.3d at 1138 (quoting *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010) ("Asylum is not available to victims of indiscriminate violence, unless they are singled out on account of a protected ground.").

Ayyad also asserts that the BIA erred in concluding that he failed to establish a well-founded fear of future persecution from Palestinian authorities because of his political opinion. On appeal, Ayyad asserts that he is fearful of Palestinian intelligence because it is operating under the mistaken belief that he is cooperating with Israeli intelligence. However, during cross-examination, Ayyad admitted that Palestinian intelligence was not looking for him. He testified further that, even if they were trying to locate him, their motivation likely stemmed from his rude behavior toward a Palestinian official in early April 2004. It is well-established that Ayyad's fear of future persecution must be based on a statutorily protected ground, either his "race, religion, nationality, membership

---

alone is to be reserved for "the case of the German Jews, the victims of the Chinese 'Cultural Revolution,' survivors of the Cambodian genocide, and a few other such extreme cases"). Ayyad has made no such showing here.

in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see, e.g.*, *Bonilla-Morales*, 607 F.3d at 1137. Ayyad did not provide any specific testimony about the incident, other than his blanket assertion that his behavior was rude. Thus, he has failed to provide persuasive evidence of a causal connection; that is, convincing evidence that any potential harm that may result from his rude comment or conduct would be premised upon his race, religion, nationality, membership in a particular social group, or political opinion. *Bonilla-Morales*, 607 F.3d at 1137.

We also agree with the BIA's ruling that PYM's attempt to re-recruit Ayyad in March 2004 is insufficient to establish past persecution. Ayyad left the PYM in 2002 without incident. When he refused to re-join, he was neither threatened nor harmed. The only evidence suggesting any possible backlash are the barbershop gunfire and bomb explosion incidents. However, we note that Ayyad's testimony regarding these events "does not compel the conclusion that [Ayyad's] situation upon [his] return to [Israel] will be any different from the dangers faced by other citizens" living in Israel's West Bank. *Yusif v. Holder*, 361 F. App'x 667, 671 (6th Cir. 2010) (unpublished) (internal quotation marks and citation omitted).

Finally, Ayyad challenges the BIA's ruling that he does not have a well-founded fear of future persecution from Hamas because he failed to provide sufficient corroborating evidence of his father's claim that Hamas was trying to kill him. Where it is reasonable to expect corroborating evidence, and an applicant has failed to provide such evidence, his claim may be denied for failure to meet his burden of proof. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004). Ayyad testified that he could not obtain a letter or statement verifying the Hamas threat because he only speaks with

his father over the telephone. Ayyad's testimony confirms that he is capable of reaching his father in Israel, yet he failed to explain why he did not ask his father for a written statement substantiating his claims. Moreover, the only record evidence of a Hamas-based threat is his father's statement, which was made more than six years ago when Ayyad first arrived in America. Accordingly, we agree with the BIA that corroborative evidence of the Hamas threat could be reasonably expected, and that Ayyad's explanation for its absence was inadequate.

Ayyad has failed to establish past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1158(b)(1)(B) & 1101(a)(42)(A). Simply put, the record in this case does not compel a contrary result.[3]

IV.

For these reasons, we affirm the BIA's decision and deny Ayyad's petition for review.

---

[3]Because Ayyad has failed to establish that he is a "refugee" eligible for asylum, he necessarily fails to qualify for withholding of removal. *See Abay*, 368 F.3d at 637.