NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0546n.06
Filed: June 24, 2005

No. 03-4216

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PAULIN KALAJ and LUCIJE KALAJ, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO GONZALES, United States | ) | |
| Attorney General, | ) | |
| | ) | PETITION FOR REVIEW FROM THE |
| Respondent. | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| | ) | |
| | ) | |

Before: BOGGS, Chief Judge, RYAN, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** The lead petitioner, Paulin Kalaj,[1] appeals the Board of

Immigration Appeals' ("the BIA") decision affirming the Immigration Judge's denial of his request

for asylum, withholding of removal, and protection under the Convention Against Torture. Because

the decision of the BIA was supported by substantial evidence and because any ineffectiveness on

the part of Kalaj's accredited representative did not prejudice him, we deny the petition to review

the decision of the BIA.

---

[1]Lucije Kalaj, the lead petitioner's wife, is a derivative claimant.

## I. Proceedings Below

Lead Petitioner Paulin Kalaj and his wife are natives and citizens of Albania. They arrived in the United States in June of 2000 as non-immigrant visitors and were authorized to remain in the country until December of 2000. Petitioners remained in the United States beyond their departure dates without authorization. In March of 2001, the Immigration and Naturalization Service ("INS") charged the Petitioners with being removable under section 237(a)(1)(B) of the Immigration and Naturalization Act, 8 U.S.C. § 1227(a)(1)(B). Petitioners admitted these facts and conceded their removability; however, they requested relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture.[2]

Paulin Kalaj testified that he was persecuted for being a leader in the Democratic Party of Albania. Kalaj testified to several facts which, he argues, demonstrate the high level of involvement he had with the Democratic Party. Kalaj claims that he helped found the Democratic party in Shkoder, a city in northern Albania. Kalaj further claims that during his involvement with the Democratic Party, he served as a regional representative for the city of Shkoder, as the secretary or

---

[2]Petitioners have only briefed the issue of relief based on asylum. Accordingly, they have waived their claim for relief pursuant to withholding of removal or the Convention Against Torture. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (noting that issues not raised in briefs are typically considered waived).

chief administrator for the Democratic mayor of Shkoder from 1993-1996, and as a member of a "privatization board" that returned land confiscated by the Communist government to its rightful private owners. Kalaj also testified that he was close friends with leaders of the Democratic Party and that he received a medal of honor from the President of Albania when the Democratic Party was in power. Finally, Kalaj testified that he explained Democratic Party ideals to individuals and to groups.

Kalaj argues that his significant involvement with the Democratic Party caused him to be persecuted because of his political affiliation. Kalaj testified to several events which, he argues, demonstrate the level of persecution to which he was subjected. First, in June of 1997, two Socialist members threatened to "take care of" Kalaj after he attempted to prevent them from stuffing a ballot box he was returning to the commission responsible for the election. Second, in September of 1997, Kalaj was stopped on the street by two armed individuals from the Socialist Party who spat on Kalaj and who told him that they "were going to kill him." Third, in January of 1998, Kalaj was detained for one night at a police station, where the police spat on him, punched and kicked him, and used a rubber stick to beat him. Finally, in May of 2000, Kalaj's car was destroyed in an explosion that Kalaj felt was meant to threaten him.

Kalaj also claims that members of his family suffered persecution based on their association with the Democratic Party. Kalaj testified that his wife went blind because the communist government refused to allow her to seek medical treatment for an eye condition, that his father was arrested and jailed, that his uncle was sentenced to death (although the sentence was later

commuted), that his father was not given housing, and that his brother was arrested and two other brothers fled the country.

Removal proceedings were held on January 12, 2002, during which the petitioners were represented by an accredited representative from the Archdiocese of Detroit.[3] After considering the evidence presented at the removal proceedings, the Immigration Judge found that the petitioners had failed to establish that they had suffered past persecution, or had a well-founded fear of future persecution, as a result of their political affiliation. The Immigration Judge found that the incidents of alleged persecution described by Kalaj were "arbitrary and random [acts]," rather than "coordinated, sustained, [and] systematic acts of persecution." The BIA affirmed the decision of the Immigration Judge and adopted his reasoning.

## II. Analysis

On petition for review, Kalaj claims that the BIA erred in denying his claim for asylum because he established that he suffered past persecution, and had a well-founded fear of future persecution, due to the leadership role he played within the Democratic Party. In the alternative, Kalaj claims that, if he did fail to establish a well-founded fear of future persecution, it was because of the ineffective assistance of his accredited representative. Kalaj argues that, but for his

---

[3]An "accredited representative" is an individual who represents a non-profit, social service, or other similar organization that establishes to the satisfaction of the BIA that: (1) it makes only nominal charges and assesses no excessive membership dues for persons given assistance; and (2) it has at its disposal adequate knowledge, information and experience. *See* 8 C.F.R. §§ 292.1 (a)(4) and 292.2(a).

representative's ineffective assistance, he would have been granted asylum. Because there is substantial evidence to support the decision of the BIA, and because any ineffectiveness on the part of Kalaj's accredited representative did not render the proceedings "essentially unfair," the decision of the BIA is affirmed.

## A. The Denial of Asylum

Kalaj argues that he should have been granted asylum because he demonstrated a well-founded fear of persecution based upon his political affiliation. This court has jurisdiction to review the decision of the BIA affirming the Immigration Judge's denial of asylum pursuant to 8 U.S.C. § 1252. On review, administrative findings of fact, such as whether an individual is entitled to refugee status, are reviewed under the substantial evidence standard, and will not be overturned "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005) (citations and internal quotation marks omitted). Because the BIA adopted the Immigration Judge's reasoning with respect to Kalaj's claims for asylum, the court of appeals reviews those aspects of the Immigration Judge's decision directly. *Id*. at 401.

Immigration Judges, acting on behalf of the Attorney General, have discretion to grant asylum to any alien who qualifies as a "refugee." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). A "refugee" is defined as an alien who is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To

establish a well-founded fear of persecution, an alien must show: "(1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citations omitted). In addition, "[a]pplicants who establish that they have suffered past persecution are presumed to have a well-founded fear of future persecution, . . . [although] this presumption may be rebutted by the government if it shows by a preponderance of the evidence that conditions in the country have changed so fundamentally that the applicant no longer has a well-founded fear of persecution." *Singh*, 398 F.3d at 401.

The Immigration Judge's determination that Kalaj did not establish either past persecution or a well-founded fear of future persecution is supported by substantial evidence. As noted by the Immigration Judge, the experiences of Kalaj's family members did not show that the petitioner himself suffered any specific harm, nor did he present evidence that he was subject to persecution based on the familial relationships. With regard to the other incidents relied upon by Kalaj, there is evidence to support the Immigration Judge's finding that the events were "arbitrary and random [in] nature, . . . rather than coordinated, sustained, [and] systematic acts of persecution." Although Kalaj alleges that he was threatened on two separate occasions in 1997, Kalaj concedes that he was not harmed in these incidents. Furthermore, although Kalaj claims that he was beaten while detained by police for one night, in 1998, he admits that he was not charged with any crime, and that no

subsequent actions were ever taken against him by authorities. In fact, Kalaj admitted that the police released him after determining that they had no evidence tying him to the incident being investigated. Finally, the circumstances surrounding the explosion of Kalaj's car are too vague to demonstrate persecution. Kalaj himself admitted that he did not know what caused the explosion, or who was responsible. Thus, Kalaj has not presented evidence that the act was anything more than simple violence.

Moreover, there is also substantial evidence to support the Immigration Judge's decision that, even if the past events amounted to persecution, Kalaj did not prove that such persecution was based on his political affiliation. The events complained of by Kalaj happened primarily between 1997 and 2000, a period of general civil strife in Albania. The State Department's Country Report on Human Rights Practices in Albania for the year 2000 states that in 1997 there was "a 5-month period of chaos and anarchy due to the collapse of pyramid schemes." In addition, a document produced by the United States Department of State in 2001, entitled "*Albania: Asylum Claims and Country Conditions*," states that "all political parties have been active in most of the country without a pattern of mistreatment even during the dark days of 1997 and more importantly there is no post-communist tradition of retribution against political leaders and few instances thereof." The profile goes on to note that "[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds" and that "[f]ar more prevalent is organized and amateur crime, exacerbated by the widespread availability of fire-arms, high unemployment and poverty, continued corruption among the police, and a culture of blood feud that is wholly independent of political activity."

Although Kalaj argues that these reports are not accurate, he has failed to introduce evidence that would require a finding contrary to that of the Immigration Judge.

**B. Ineffective Assistance of Accredited Representative**

Kalaj next argues that any lack of evidence supporting his position was based on the ineffective assistance of his accredited representative, and that this ineffective assistance resulted in a denial of his due process right to a fair hearing. Assuming *arguendo* that the representative's assistance was ineffective, Kalaj has not stated a viable due process claim.

As an initial matter, it is clear that an alien in removal proceedings has no Sixth Amendment right to the effective assistance of counsel. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that the Sixth Amendment right to the effective assistance of counsel is premised on a constitutional right to counsel. *See id*. at 752-53. An alien appearing in removal proceedings has "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A); *id.* § 1362. However, an alien "is not entitled to have counsel appointed at government expense to represent him at the hearing." *Delgado-Corea v. INS*, 804 F.2d 261, 262 (4th Cir. 1986). It follows that an alien may not bring an ineffective assistance claim under the Sixth Amendment if that claim relates to the conduct of her counsel during removal proceedings. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003) ("Because '[a] deportation proceedings is a purely

civil action,' an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment.") (internal citation omitted).

We have previously stated that at alien can, in at least some circumstances, state a cognizable claim for ineffective assistance of counsel under the Fifth Amendment. *See id*. at 724 (an "alien will succeed if he meets his burden of showing more than 'mere[] ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'") (quoting *Ramirez-Durazo v. INS*, 794 F.2d 491, 500 (9th Cir. 1986)). However, such claims remain subject to the requirement that an alien claiming that ineffective assistance of his counsel resulted in a denial of due process must still demonstrate that "but for [his counsel's] legal advice, [he] would have been entitled to continue residing in the United States." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699-700 (6th Cir. 2001). This requirement applies a fortiori in a case where ineffectiveness is asserted on the part of a non-lawyer accredited representative.

Kalaj argues that, but for the ineffective assistance of his accredited representative, he would have been granted asylum. A review of the record however demonstrates that the representative did, in fact, bring to the attention of the Immigration Judge many of the facts that Kalaj asserts would have been enough to establish persecution based on political affiliation. Although Kalaj argues that the information could have been presented more persuasively, the fact remains that the IJ was made

aware of the facts that Kalaj claims entitles him to asylum. Under such circumstances, it is clear that

Kalaj was not denied a fundamentally fair hearing.[4]

## III. Conclusion

The petition for review is DENIED.

---

[4] Kalaj also argues that his case should have been referred to a three-member panel of the BIA, rather than a single member because the Immigration Judge made a clearly erroneous factual determination. This contention lacks merit. A "three-member panel on appeal is appropriate only when the BIA needs to establish precedent, the BIA needs to settle differences among IJs, the case is of national importance, the IJ's decision is not in conformity with the law, the IJ makes a clearly erroneous factual determination, or the Board needs to reverse the IJ's decision." *Denko*, 351 F.3d at 727 n.6 (6th Cir. 2003) (citing 8 C.F.R. § 1003.1(e)(6)). Even assuming the reviewability of the decision not to refer the case to a three-member panel, these conditions are not present in the current case. Furthermore, the BIA did not err by affirming based upon the decision of the Immigration Judge as this court has "consistently allowed the IJ's decision to become the final agency determination subject to review when the Board has adopted the IJ's findings or has deferred to the IJ's decision." *Id.* at 728.