RICHARD F. SUHRHEINRICH, Circuit Judge.
Aleksander, Preke, Preñe, Bernardina, and Andrian Spaqi petition this court for review of the Board of Immigration Appeals’s (“BIA”) decisions denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”). In Case No. 09-4442, Aleksander (“Aleksander”) petitions for review of the BIA’s denial of asylum on the grounds that the BIA violated his constitutional right to procedural due process. He also claims that he established past persecution and a well-founded fear of future persecution, and that it is more likely than not that he will be persecuted or tortured if returned to his country of origin. In Case No. 09-4444, Prek, Preñe, Bernardina, and Andri-an (collectively “Petitioners”) claim that the Immigration Judge (“IJ”) abused her discretion when she denied their motion to sever their derivative applications after the principal applicant, Prek Spaqi, was determined to be statutorily barred from asylum and withholding. They also con *550 tend that the BIA abused its discretion when it denied their motion to remand, and that they qualify for protection under the CAT.
Because we conclude that Aleksander’s claim fails on the merits, we do not address his due process claim. We DENY Aleksander’s requests for asylum and withholding of removal. Because he waived his challenge to the BIA’s denial of his CAT claims, we DENY review of Alek-sander’s request for protection under the CAT.
We also DENY the Spaqi family’s petition for review in Case No. 0£M444, because the BIA did not abuse its discretion in denying the motion to sever. The Spa-qis failed to challenge the IJ’s denial of their CAT claim, and it is therefore beyond the scope of this court’s review.
I. BACKGROUND
Petitioners in these consolidated cases belong to the same immediate family. They are all natives of the former Yugoslavia who were all born in the village of Djakvoica near the Albanian border in what is now Kosovo. The parties to the petition for review in Case No. 09-4444 are Prek Spaqi (“Prek”), his wife Preñe, their daughter Bernardina, and son Andrian. Their son Aleksander Spaki (“Aleksan-der”) is a party to a separate but consolidated petition for review in Case No. 09-4442.
The Spaqis entered the United States without permission near Laredo, Texas on September 4, 2004. On the same day, the Department of Homeland Security (“DHS”) filed Notices to Appear (“NTA”) against Prek, Preñe, Bernardina, and And-rian, charging them with being subject to removal for entering the United States without having been admitted or paroled. DHS filed an NTA against Aleksander on November 2, 2004. Each of the petitioners admitted the factual allegations in the NTAs and conceded removability. An IJ granted their motions to change venue to Detroit, Michigan.
On August 24, 2005, Prek filed applications for asylum, withholding of removal, and protection under the CAT, listing other family members as derivative beneficiaries.[1] Aleksander was included on his father’s application as a derivative beneficiary. Aleksander was twenty years old at the time of entry and turned twenty-one shortly thereafter.[2] The IJ “separated out” Aleksander’s claim because he was twenty-one years old, and could not longer qualify as a derivative beneficiary of his father. Aleksander appeared before an IJ the same day in a preliminary master calender hearing. On October 5, 2005, Aleksander filed a separate application for asylum, withholding of removal, and protection.
On November 6, 2006, Prek Spaqi testified before the IJ in support of his applications for relief. Administrative Record (“A.R.”), 09-442[3], at 634-91. Prek testified that his family was involved in a land dispute with their neighbors, the Romojas. Prek stated that sometime around 1984, *551 the Serbian government “created a law to fix ... the parts of land in Kosovo,” and a commission from Gjakova seized a portion of Prek’s land and opened a road behind his house. A.R. 637-38. Prek told the IJ that he filed a complaint with the Directory in Pristina, that “experts” were sent to the site, and that the Directory ruled that “the Commission from Gjakova” had to return the land to Prek. A.R. 641. The Gjakova Commission appealed that decision to the Supreme Court, which ruled that the Gjakova Commission had to return the land to the Spaqis and close the road it was constructing behind Prek’s house. A.R. 642.
When the Romoja family refused to close the road, Preq’s brother proceeded to do so himself one day while Prek was hunting. A.R. 643. Upon his return home, Prek observed the Romojas get “real angry” at his brother, and that “12 people came ... and started shooting.” Prek shot his pistol “three times in the air[,] ... two killings happened,” and two members of the Romoja family were killed. A.R. 643-45. About an hour later, the police arrested Spaqi, his father and brother, and took them to jail in Pia, Kosovo. A.R. 645. Following a hearing, Prek was sentenced to twelve years for murder and attempted murder, and his brother was sentenced to death. A.R. 646. Prek appealed to the Pristina Supreme Court, and on November 23, 1989, that court reduced his sentence to three years, because of “mistakes” made by the trial court. A.R. 647, 652. According to Prek, the Pristina Supreme Court determined that the Ro-moja family “did shoot on us,” and that he was “sentenced before that I did kill somebody but that was not true.” A.R. 648.
Prek told the IJ that he did not go back to his village upon his release from prison, because he feared retribution. He explained that “right away when ... a member of [a] family there is killed they are in a blood feud.” A.R. 653-54. Prek lived six or seven kilometers outside of his village until 1996, when he left for Croatia. A.R. 655-57. He visited his village in Ko-sovo seven times, without incident. A.R. 657-58. In 1998, he moved his entire family to Albania. A.R. 658-59. At this time he learned from his wife that the Romoja family was “beating a lot their kids [and] their men,” and that a priest had attempted a reconciliation, but that the Romoja family had refused. A.R. 659-60.
Nicole Pepa, a national of Kosovo, a legal permanent resident of the United States, and a relative of the Spaqi family, also testified. A.R. 612-32. Pepa told the IJ that he has known the Spaqi family since he was two years old, and that the Spaqis are “one of the most well known families in Kosovo, and the most patriotic family in Kosovo.” A.R. 616. He explained that he was “a chief for reconciliation of the blood-feud,” which he characterized as a non-governmental reconciliation commission. A.R. 617, 632. Pepa stated that the blood feud between the Spaqis and the Romojas began when the government seized the Romojas’s land and redistributed it to the Spaqi family. Pepa indicated that he was unable to resolve the dispute between the two families. A.R. 621-25.
The IJ found Prek ineligible for asylum and withholding as a matter of law as a result of his conviction and sentence for attempted murder. Counsel subsequently moved to sever the cases of Preñe, Bernar-dina, and Andrian, the three family members who remained as derivative beneficiaries. The IJ denied the motion. After testimony was complete, the IJ issued an oral decision determining that Prek was statutorily barred from asylum and withholding of removal as a result of his commission of a particularly serious crime. *552 The IJ also denied Prek’s application for protection under the CAT. She then ordered Prek, Preñe, Bernardina, and Andri-an deported to Serbia.
The Spaqi family appealed the decision. The BIA affirmed the IJ’s decision and dismissed the appeal. The Spaqi family timely petitioned this court for review of the BIA’s decision.
On September 22, 2008, Aleksander testified at a hearing before the same IJ in support of his application for relief. Alek-sander also testified that his family was engaged in a blood feud with the Romoja family in Kosovo, concerning “the land,” and that his life would be in danger if he returned to Kosovo. Aleksander stated that he suffered many beatings from the older Romoja boys. He stated that when he was about thirteen years old, he went to live with his aunt in a village approximately ten kilometers away from Qerim, because his mother told him his life was in danger. Aleksander reported that during his second year of high school, friends of the Romoja family beat him on one occasion, pushing him to the ground and warning “that one day [they] are going to kill the entire family.” Aleksander stated that he was afraid to report the incident to the police and that when he told his parents, they said to be careful. Aleksander claimed that he wanted to go to college but the Romoja family prevented it “[bjecause they have many people that work for these things with money.” Aleksander stated that he came to the United States with his family “to get out of danger.”
The IJ allowed Aleksander to introduce the transcript of his father’s proceeding. The IJ and BIA therefore considered the testimony of Prek and Pepa in deciding Aleksander’s case.
On December 1, 2008, the IJ issued a written decision determining that Aleksan-der failed to file within one year of entry and was therefore ineligible for asylum, denying his applications for withholding of removal and protection under the CAT, and ordering him removed to Kosovo. The IJ determined that Aleksander failed to show past persecution or a well-founded fear of future persecution on account of a protected ground, and had not demonstrated a likelihood that he would suffer torture with the acquiescence of the Kosovo government. She found Aleksander credible but concluded that his testimony was not sufficiently detailed and persuasive without corroborating documentation. Aleksander filed a timely appeal.
On October 30, 2009, the BIA affirmed the IJ’s decision and dismissed the appeal. The BIA agreed with the IJ’s determination that Aleksander was ineligible for asylum because his application was filed after the one-year period, and was unable to establish changed or extraordinary circumstances relating to the delay. In the alternative, the BIA “agree[d] with the [IJ]’s alternative finding that [Aleksander] failed to demonstrate eligibility for asylum.” The BIA stated that it
agreed with the Immigration Judge that [Aleksander’s] evidence of a family blood feud, where [Aleksander] was beaten up by members of the rival family, did not rise to the level of past persecution on account of a statutorily protected ground. As noted by the Immigration Judge, the discord between the families stemmed from a fatal shooting, and an angry family seeking revenge for the death of their family member. (I.J. at 13). See Klawitter v. INS, 970 F.2d 149 (6th Cir.1992) (finding harm based solely on a personal vendetta does not constitute persecution on account of a statutorily protected ground).
A.R. at 3 (BIA Decision at 2). The BIA referenced the IJ’s finding that: “The alleged blood feud has its origin in the crim *553 inal actions of certain members of the Spaqi family. [Aleksander] ... failed to establish that the alleged private actions targeted the Spaqi family as a group or that the government has failed or refused to act.” A.R. at 92 (IJ Decision at 13).
The BIA also ruled that Aleksander failed to meet the higher standard for withholding of removal and that he could not prove likelihood of torture by or with the acquiesence of the government to qualify for protection under CAT.
Aleksander filed a timely petition for review in this court. See 8 U.S.C. § 1252(b)(1). His appeal was later consolidated with his family’s.
II. ANALYSIS
A. Standards of Review
Because the BIA issued its own opinion rather than summarily affirming the IJ, we review the decision of the BIA as the final agency determination. Morgan v. Keisler, 507 F.3d 1053, 1057 (6th Cir.2007). “To the extent the BIA adopted the [IJ]’s reasoning, however, this Court also reviews the [IJ]’s decision.” Khalili v. Holder, 557 F.3d 429, 435 (6th Cir.2009). Questions of law are reviewed de novo. Id. We review both the IJ’s and the BIA’s factual findings under the substantial-evidence standard. Id. “These findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” Id. (internal quotation marks omitted and citation omitted).
B. Aleksander’s Appeal, Case No. 09-4442
1. Timeliness
The Board adopted the IJ’s determination that Aleksander was ineligible for asylum because he failed to file within the one-year period, and that he failed to establish any changed or extraordinary circumstances related to his delay. Because we conclude that substantial evidence supports the BIA’s determination that Alek-sander has not demonstrated eligibility for asylum, we do not address this argument.
2. Merits
Aleksander appeals the BIA’s alternative holding denying his asylum claim on the merits, as well as his claims for withholding of removal and protection under the CAT. To qualify for asylum relief, Aleksander must demonstrate that he was subject to past persecution or has a well-founded fear of future persecution “on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42); see also id. § 1158(b)(l)(B)(i); I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). To establish that the persecution is “on account of’ the protected ground of his political opinion or social group, Aleksander must provide “some evidence ... direct or circumstantial,” that his persecutors are motivated by his political opinion or social group. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). “Persecution is ‘the infliction of harm or suffering by the government, or persons a government is unwilling or unable to control, to overcome a characteristic of the victim.’ ” Awad v. Holder, 429 Fed.Appx. 552, 557 (6th Cir.2011) (quoting Pilica v. Ashcroft, 388 F.3d 941, 950 (6th Cir.2004) (citing In re Kasinga, 21 I. & N. Dec. 357 (BIA 1996))). “Asylum is not available to an alien who fears retribution solely over personal matters.” Zoarab v. Mukasey, 524 F.3d 777, 781 (6th Cir.2008).
As the testimony reflects, the blood feud related to the land dispute, which Prek himself acknowledged was a “personal problem.” More importantly, the rec *554 ord shows that the police and government authorities were active in both trying to resolve the land dispute and prosecute the members of families who had engaged in murder or attempted murder of rival families. The land dispute was resolved through the court system in Prek’s favor. Prek and his brother were arrested for their role in shootings. And the court system again acted in Prek’s favor, eventually reducing his sentence from twelve years to three years. These facts belie any assertion that the government was unwilling or unable to control the alleged perpetrators.
The record also established that after Prek left the village where he had been involved in the killing of two members of the Romoja family, his family members remained there essentially without harm. Moreover, Prek’s brother returned to Ko-sovo after his release from prison and did not report any harm or harassment. Although Aleksander contended it was necessary for him to live with his aunt ten kilometers from home, he did not suffer any serious harm from the Romoja family. Aleksander claimed he was beaten by the older Romoja boys, but the incidents were never reported to the police. See El Ghorbi v. Mukasey, 281 Fed.Appx. 514, 517 (6th Cir.2008) (holding that the alien failed to show persecution for purposes of attaining asylum where she never complained to or sought protection from the government or the police); Vata v. Gonzales, 243 Fed.Appx. 930, 943 (6th Cir.2007) (holding that the alien failed to demonstrate that Albanian authorities were unwilling or unable to protect him where he failed to report threatening phone calls to the Albanian police).
In short, in this case, the “culture of blood feud ... is wholly independent of political activity.” Kalaj v. Gonzales, 137 Fed.Appx. 851, 855 (6th Cir.2005) (in the context of Albania). See also Locaj v. Gonzales, 219 Fed.Appx. 483, 485 (6th Cir.2007) (same). Even assuming the Spaqi family constitutes a meaningfully defined social group, Aleksander failed to establish his membership in this social group motivated any persecution. See Locaj, 219 Fed.Appx. at 485.
Because Aleksander failed to prove eligibility for asylum, he cannot establish the more stringent standard for withholding of removal. See Liti v. Gonzales, 411 F.3d 631, 640-41 (6th Cir.2005).
Concerning his CAT claim, Aleksander asserts in his petition for review that it is more likely than not that he would be persecuted or tortured upon removal. However, he makes no developed argument particular to his CAT claim. He has therefore waived relief on those grounds. See Dillery v. City of Sandusky, 398 F.3d 562, 569 (6th Cir.2005) (“It is well-established that ‘issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.’ ”) (quoting United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999)); Shkabari v. Gonzales, 427 F.3d 324, 327 n.1 (6th Cir.2005) (holding that withholding of removal and CAT claims not developed in brief were waived on appeal).
C. Spaqi Family Appeal, Case No. 09-4444
We review for abuse of discretion the BIA’s denial of a motion to remand. Abu-Khaliel v. Gonzales, 436 F.3d 627, 634 (6th Cir.2006). See Allabani v. Gonzales, 402 F.3d 668, 675 (6th Cir.2005) (governing motions to reopen). We also review for abuse of discretion the BIA’s determination that the IJ acted within her discretion in denying a motion to sever. Cf. id. (reviewing an IJ’s denial of a continuance for an abuse of discretion because the grant of the continuance fell within the discretion of *555 the IJ). An abuse of discretion occurs when the denial of a motion “was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.” Id. (internal quotation marks and citation omitted).
The BIA agreed with the IJ’s denial of the Spaqi’s request to sever because “the [Petitioners] were represented by counsel, their counsel had an opportunity to sever the cases prior to the merits hearing, and the grounds for statutory denial had existed since the inception of the case.” A.R., 09-4444, at 4 (BIA Decision at 3). On appeal, Petitioners argue that “there was no conclusive indication that the IJ would have found Prek statutorily ineligible for asylum and withholding of removal prior to the IJ actually making such a ruling.” Pet. Br., 09-4444, at 21. There is a clear statutory basis for the IJ’s finding, however, that Prek is statutorily ineligible for asylum based on his conviction for attempted murder, an aggravated felony under the INA. See 8 U.S.C. § 1158(b)(2)(A)(ii) (stating that an alien is barred from asylum if he has been convicted of a “particularly serious crime”); id. § 1158(b)(2)(B)(i) (stating that “a particularly serious crime” includes an “aggravated felony”); id. § 1101(a)(43)(A), (U) (defining “aggravated felony” as including “murder” and attempted murder); id. § 1101(a)(43) (aggravated felony includes “such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years”). Furthermore, Petitioners disclosed this conviction on the family’s asylum application, suggesting their awareness of its significance. And they do not contest its application on appeal. Accordingly, the IJ provided a rational explanation for denying the motion to sever, which the BIA found to be appropriate, and no abuse of discretion occurred.
The BIA properly styled the motion to remand as one to reopen, which it may deny when “the movant has not established a prima facie case for the underlying -substantive relief sought.” INS v. Abudu, 485 U.S. 94, 104, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). The BIA denied the motion to remand because Petitioners failed to satisfy “their heavy burden of demonstrating the result of their case would likely change upon remand.” A.R., 09-4444, at 4 (BIA Decision at 3). The BIA concluded that the remaining Spaqi family members did not provide evidence demonstrating past persecution or a well-founded fear of future persecution on account of a protected ground.
Prima facie evidence is that which “reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.” Alizoti v. Gonzales, 477 F.3d 448, 452 (6th Cir.2007) (internal quotation marks and citation omitted). As the BIA and the IJ found, “the evidence of record simply indicates that [Petitioners] are part of a family that was involved in a blood feud with another private family.” A.R., 09-4444, at 4 (BIA Decision at 3). Moreover, an individual applicant for asylum must prove that he or she will be singled out for persecution. See Akhtar v. Gonzales, 406 F.3d 399, 405-06 (6th Cir.2005). “‘Although acts of violence against an alien’s family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant, himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution.’ ” Id. (quoting Gebremaria v. Ashcroft, 378 F.3d 734, 739 (8th Cir.2004)). Thus, while relevant, familial status alone cannot support a claim for persecution. Id. at 406 (citing Ciorba v. Ashcroft, 323 F.3d 539, 545 (7th Cir.2003)). *556 Cf. Mapouya v. Gonzales, 487 F.3d 396, 412 (finding that the applicant provided evidence tending to show that he still faced an individualized threat of future persecution despite changed country conditions). The evidence presented at the 2006 hearing focused primarily on Prek’s conflict with the Romojas, and Prek’s subsequent departure from Kosovo, and Pepa’s efforts at reconciliation. Because this evidence was insufficient to establish a prima facie case of eligibility with respect to Prek in that it demonstrated simply a private dispute, it was likewise insufficient to establish eligibility for the derivative family members[4] Thus, the BIA did not act abuse its discretion in concluding that the derivative beneficiaries had not established a prima facie case of eligibility for asylum or withholding.
Lastly, Petitioners did not challenge the IJ’s denial of Prek’s application for protection under the CAT in his petition to the BIA. The claim has not been exhausted and is therefore beyond the scope of this court’s review. 8 U.S.C. § 1252(d)(1).
III. CONCLUSION
For the foregoing reasons, we DENY the petition for review in Case No. 09-4442. We also DENY the petition for review in Case No. 09-4444.

. A spouse and children under age twenty-one may also be granted asylum if the "principal applicant," 8 C.F.R. § 1208.21(a), lists them on his application and they are in the United States. Id. § 11208.3(a). See 8 U.S.C. §§ 1158(b); 1101(b)(1).

. Aleksander was born on October 10, 1983. He entered the United States on September 4, 2004. He turned twenty-one on October 10, 2004.

. The testimony of Prek Spaqi and Nicole Pepa, is part of the record in both Case Nos. 09-4442, and 09-4444. For ease of reference, the citations provided are found in Case No. 09-4442.

. The government argues that the derivative family members cannot establish prima facie eligibility because they never filed their own applications. Because the BIA did not abuse its discretion in denying the motion to reopen on other grounds, we need not and do not address the procedural requirements for filing a motion to reopen as a derivative beneficiary. Compare Haddad v. Gonzales, 437 F.3d 515, 518 n. 5 (6th Cir.2006) (noting that filing a motion to reopen as a derivative "is incompatible with the statute and regulations”), with Selami v. Gonzales, 150 Fed.Appx. 504, 506-07 (6th Cir.2005) (unpublished opinion) (dismissing derivative’s petition for review because she had filed no independent asylum application of her own and noting the government's suggestion that she file a motion to reopen accompanied by her own application).