NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0024n.06

No. 15-3024

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRAN GJOKAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| LORETTA E. LYNCH, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | |

**FILED**
Jan 14, 2016
DEBORAH S. HUNT, Clerk

BEFORE:    ROGERS and DONALD, Circuit Judges; and ROSE, District Judge.[*]

ROSE, District Judge.  Fran Gjokaj petitions for review of a decision of the Board of Immigration Appeals denying his motion to reopen proceedings for purposes of applying for political asylum, withholding of removal and relief under the Convention Against Torture based on changed country conditions.  Because the Board did not abuse its discretion in denying Petitioner's motion, the Court **DENIES** the petition for review.

Petitioner was born in Albania in 1964.  He arrived to New York City on a B-2 visa with a singing group on July 1, 1994.  Within two months of his arrival, he applied for political asylum based on alleged family persecution by the Albanian government.  The Immigration and Naturalization Service ("INS") did not approve the asylum application, but referred it to the Immigration Court.  The INS issued an order to show cause commencing deportation

---

[*] The Honorable Judge Thomas M. Rose, District Judge for the Southern District of Ohio, sitting by designation.

proceedings, ordering Petitioner to appear on January 26, 1996, and show why he should not be deported.

Instead, Petitioner moved to Detroit, Michigan. His daughter Eva was born on February 3, 1997 in Warren, Michigan. The deportation hearings were moved to Detroit, where Petitioner was ordered to be deported *in absentia* on August 25, 2003. Proceedings were reopened on September 5, 2003. Petitioner then waited until June 15, 2006 for a final hearing. The day of the final hearing, Petitioner withdrew his application for asylum and withholding of removal and was granted one year voluntary departure. When Petitioner arrived at the Immigration and Customs Enforcement ("ICE") office on June 14, 2007, however, ICE placed Petitioner under an Order of Supervision, allowing him to stay in the United States to raise his U.S.-born child.

On December 4, 2011, Petitioner filed a motion to reopen his removal proceedings based on changed country conditions in Albania under 8 C.F.R. § 1003.2(c)(3)(ii) and 8 U.S.C. §§ 1208.4(a)(4), 1229a(c)(7)(C)(ii).

The motion to re-open alleges that in 2009 his nephew, Viktor Prendi, killed his own mother, Dile Prendi, whose maiden name was Gjergji, to punish her for allegedly making insulting comments about her husband and Viktor's father, Nikoll Prendi, to friends after his death. Petitioner alleges that at Dile's funeral, the Gjergji family declared a blood feud against Petitioner and his brother Pjeter as heads of the murderer's family. Petitioner telephoned relatives of his deceased sister-in-law and was told by Dile's brother, Martin Gjergji, not to "set [] foot" in Albania again. While Viktor was prosecuted for the murder, he is exempt from the alleged blood feud, as he is a member of the Gjergji family. Pjeter Prendi is now allegedly in hiding in Greece. An attempt to reconcile the matter initiated by Petitioner's mother in 2010 through the state Center for Reconciliation failed in April 2011.

On January 26, 2012, the immigration judge denied the motion to reopen, explaining that a motion to reopen must be filed no later than 90 days after the entry of a final order of deportation, with the exception of a motion based upon a change in country conditions. The immigration judge found that there was no change in country conditions, as blood feuds had existed in Albania for centuries. Categorizing the facts Petitioner described as a change in personal circumstances, the immigration judge denied the motion as time-barred. The immigration judge noted that Petitioner's nearly three-year delay in filing the motion to re-open added to the decision not to re-open. The immigration judge also found Petitioner violated his order of deportation and chided Petitioner for his claim to have an order of supervision.

On February 17, 2012, Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals. Besides contending that the blood feud constituted a change in country conditions, Petitioner explained that he waited to file his motion to reopen because he was trying to negotiate an end to the feud. He further argued that the finding of untimeliness did not preclude him from Convention Against Torture protection. Petitioner explained that he did not deliberately violate a voluntary departure order, because Department of Homeland Security ("DHS") officers had placed him under an order of supervision and provided evidence of the order.

On February 10, 2012 DHS sent an appointment letter requiring Petitioner to report to the DHS ICE offices "to discuss immigration status," a meeting at which Petitioner alleges he expected to be deported. The Board of Immigration Appeals issued an order on February 27, 2014, dismissing Petitioner's appeal, reasoning that Petitioner had failed to move to reopen within a reasonable period of time after any change in country conditions occurred. When Petitioner sought review of that decision in this Court, *Gjokaj v. Holder*, 14-3246, Respondent

moved that the matter be remanded to the Board to permit the Board to consider Petitioner's proffered reasons for filing the motion to reopen when he did and further moved that a stay of deportation be entered. We remanded, noting that our decision deprived us of jurisdiction to rule on the motion to stay deportation.

On remand, the Board observed that there is no 90-day deadline for moving to reopen after a change in country conditions, and further noted that there is no express requirement that a motion to reopen based upon a change in country conditions be filed within a reasonable period of time after that change in country conditions. As to the merits of the petition, however, the Board noted that a motion to reopen proceedings must meet a "heavy burden" of showing materially changed country conditions in order to establish a prima facie case for relief or protection (citing *Matter of S-Y-G-*, 24 I.&N. Dec. 247, 258 (BIA 2007). The Board emphasized that the harm Petitioner alleged stemmed from what it characterized as a personal intra-family matter in Albania rather than persecution motivated by a statutorily protected characteristic. Additionally, the Board found that Petitioner's proffered evidence lacked specific and detailed facts necessary to establish a prima facie case (citing *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004). Petitioner's evidence lacked specificity regarding dates, content or manner of any threats against him. Failing to qualify for the change of country conditions exception, the Board concluded that the motion to re-open was untimely. Petitioner filed this second petition to review on January 9, 2015.

"The decision to grant or deny a motion to reopen ... is within the discretion of the [BIA]," 8 C.F.R. § 1003.2(a), and our review is for an abuse of discretion. *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). The Supreme Court has made clear that the BIA retains broad discretion to deny such motions. *INS v. Doherty*, 502 U.S. 314, 323 (1992). Moreover, a motion

to reopen is analogous to a "motion for a new trial in a criminal case on the basis of newly discovered evidence, as to which courts have uniformly held that the moving party bears a heavy burden." *I.N.S. v. Abudu*, 485 U.S. 94, 110 (1988).

We have explained that the BIA abuses its discretion if its denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Alizoti v. Gonzales*, 477 F.3d 448, 453 (6th Cir. 2007) (internal quotation marks and citation omitted). Moreover, the BIA will deny a motion to reopen if the movant cannot establish a prima facie showing of eligibility for the underlying requested relief. *Id*. at 451–52.

Thus, Petitioner must show that there is a "reasonable likelihood," if his case is reopened, that he will be able to establish "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," and that the evidence supporting his motion "was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. §§ 1229a(c)(7)(C)(ii), 1101(a)(42)(A), 1158(b)(1). In addition, because Petitioner's motion is time-barred under 8 U.S.C. § 1229a(c)(7)(C)(i), which requires an asylum applicant to file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal[,]" he is required to establish materially changed country conditions in Albania between the IJ's denial of his asylum application and his motion to reopen. 8 U.S.C. § 1229a(c)(7)(C)(ii).

"Asylum is not available to an alien who fears retribution solely over personal matters." *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008). Here, the testimony reflects a blood feud related to retribution for a murder, which is a personal matter. More importantly, the government resolved the case of the murder of Dile Prendi and there is no reason to doubt it

would address a murder seeking to avenge her death extra-judicially. In this case, the "culture of blood feud ... is wholly independent of political activity." *Kalaj v. Gonzales*, 137 F. App'x. 851, 855 (6th Cir. 2005) (in the context of Albania). *See also Locaj v. Gonzales*, 219 F. App'x. 483, 485 (6th Cir. 2007) (same), *Spaqi v. Holder*, 451 F. App'x 548, 554 (6th Cir. 2011), *but see id.* 560-61 (Moore, J., dissenting in part) ("Because family identity may be common, distinctive, and immutable, we observed that a particular social group defined by 'membership in the same family[ ] is widely recognized' in this circuit and others as falling within the INA's protection.")

There is evidence of a vague threat and efforts toward reconciliation. This evidence is insufficient to establish a prima facie case of eligibility with respect to Petitioner in that it demonstrated simply a private dispute. Thus, the BIA did not abuse its discretion in concluding that Petitioner had not established a prima facie case of eligibility for asylum or withholding.

Petitioner also alleges that the BIA violated due process by failing to specifically address his claims for Convention Against Torture relief and withholding of removal. However, the BIA had no need to address them because its determination that Petitioner failed to make out a prima facie case for asylum is dispositive of whether he is eligible for Convention Against Torture relief or withholding of removal. Petitioner's Convention Against Torture and withholding of removal claims fail for the same reason his asylum claim fails.

Because the Board did not abuse its discretion in concluding that Petitioner had not established a prima facie case, we **DENY** the petition for review.