NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0454n.06

Case No. 25-3074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 07, 2025
KELLY L. STEPHENS, Clerk

MASUD AHMED,

  Petitioner,

v.

PAMELA BONDI, Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

**MATHIS, Circuit Judge.** Masud Ahmed seeks review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny his petition.

**I.**

Ahmed is a native and citizen of Bangladesh. He lived there with his family until 2016, when he fled to the United States because of an intrafamilial property dispute. Ahmed's father passed away in 2015, and he left their family home to Ahmed's mother, who later transferred ownership of the property to Ahmed. Two of Ahmed's paternal cousins were unhappy about the disposition of the land and wanted it for themselves.

On February 1, 2016, the cousins and three unknown individuals confronted Ahmed and his mother at their home. Ahmed asserts that his cousins were "very angry" and wanted to know

why his mother transferred the property to him. A.R. 156. Ahmed and his mother went inside their home, locked the door, and did not respond.[1] After about 30 minutes, the cousins and the other individuals left the property. Neither Ahmed nor his mother suffered any injuries.

The next day, Ahmed complained about the incident to his village leader. The village leader could not resolve the dispute, so Ahmed sought intervention from the local police. The police refused to intervene because Ahmed's cousins were influential supporters of the Awami League, the political party in control of Bangladesh at the time.

After learning that Ahmed complained to the police, the cousins and two others confronted Ahmed while he was on his way home from work. They grabbed Ahmed by the collar and asked him why he "went to the police station to file a complaint." *Id.* at 163. Without waiting for a response, they all started hitting and kicking him. The attackers fled when another car drove toward them. Ahmed went to the hospital and received treatment for his injuries.

Ahmed did not return home when he left the hospital. Instead, he moved in with his aunt. During Ahmed's absence, the cousins continued to pressure Ahmed's mother to give them the house. One of the cousins showed up with several others at Ahmed's aunt's house to ask about his location. Ahmed and his family believed that his life was in danger, so his mother arranged for his travel to the United States.

Soon after Ahmed arrived in the United States, the Department of Homeland Security ("DHS") commenced removal proceedings against him. Ahmed admitted to DHS's charge of removability and applied for asylum, withholding of removal, and CAT protection. He argued

---

[1] Ahmed testified inconsistently about this incident. He initially testified that his cousins came inside his home. He later clarified that they did not.

that he was persecuted on account of his membership in a protected social group—Bangladeshi landowners—and would face future persecution and torture if he returned to Bangladesh.

The IJ denied Ahmed's application for relief. The IJ found that Ahmed was not entitled to asylum or withholding of removal because his proposed social group was not cognizable. The IJ also found that Ahmed's cousins threatened him for personal reasons, not because of a protected status, and Ahmed could internally relocate within Bangladesh to avoid persecution. Finally, the IJ concluded that Ahmed was not entitled to CAT protection because he had not shown that he would be subject to torture by or with the acquiescence of a public official.

Ahmed appealed to the BIA. He argued that the IJ erred in finding that his proposed social group was not cognizable. He did not challenge the IJ's findings with respect to internal relocation and CAT protection, so the BIA concluded that those arguments were waived. It affirmed the IJ in every other respect.

**II.**

We have jurisdiction to review the BIA's final orders of removal. 8 U.S.C. § 1252(a)(1); *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). We consider the BIA's decision "the final agency determination" when it issues a "separate opinion." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497 (6th Cir. 2015) (quotation omitted). We "also review the [IJ]'s decision to the extent that the [BIA] adopted it." *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020).

We review the BIA's legal determinations de novo and its factual findings under the substantial-evidence standard. *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024). Under the substantial-evidence standard, we "will uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (citation modified).

We will not reverse the BIA's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (quotation omitted).

**III.**

Ahmed argues that the BIA erred by denying his application for asylum and withholding of removal. These claims afford similar relief—they protect a noncitizen from removal based on the noncitizen's membership in a protected group. DHS or the Attorney General may grant asylum to an applicant who proves he is "unable or unwilling to return to" his "country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). The Attorney General may not remove a noncitizen to a country if that person's "life or freedom would be threatened in that country because of" his "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A).

Both asylum and withholding-of-removal claims require an applicant to show a "nexus" between his "risk of persecution in the country of removal" and his "membership in a protected group." *Patel v. Bondi*, 131 F.4th 377, 381 (6th Cir. 2025). To show a nexus under either claim, the applicant must present "*some* evidence" that "the government, or persons the government is unwilling or unable to control," sought "to overcome a [protected] characteristic." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023) (quotations omitted). "This is a question of motive, not just simple causation." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019).

The standard for showing a nexus differs for asylum and withholding-of-removal claims. "[A]n asylum claim requires that a statutorily protected ground be 'at least one central reason' for alleged persecution." *Sebastian-Sebastian*, 87 F.4th at 851 (quoting *Guzman-Vazquez v. Barr*, 959

F.3d 253, 270 (6th Cir. 2020)). But a withholding-of-removal claim "requires only that a statutorily protected ground be 'a reason' for alleged persecution." *Id.* (quoting *Guzman-Vazquez*, 959 F.3d at 271). Because "'a reason' is different from—and weaker than—'a central reason,'" *Guzman-Vazquez*, 959 F.3d at 272, an applicant who cannot satisfy the nexus requirement for his withholding-of-removal claim necessarily cannot satisfy the more stringent requirement for his asylum claim.

Ahmed argues that "Bangladeshi landowners" qualifies as a particular social group. We will assume, without deciding, that it does. Even so, Ahmed has failed to show that the BIA erred in finding that he did not establish a nexus between his alleged persecution and his proposed social group. "A nexus determination is a finding of fact and is thus reviewed under the substantial-evidence standard." *Sebastian-Sebastian*, 87 F.4th at 847.

To obtain relief, Ahmed needed to show that his status as a Bangladeshi landowner was a reason for his persecution. But, as the BIA found, Ahmed's cousins did not target him based on his social status; they targeted him for personal reasons. Neither asylum nor withholding of removal is available to applicants who fear "retribution solely over personal matters." *Sebastian-Sebastian*, 87 F.4th at 847 (quotation omitted); *Kamar v. Sessions*, 875 F.3d 811, 818 (6th Cir. 2017). Ahmed's dispute with his cousins was a personal, intrafamilial dispute over the disposition of family property. There is no evidence that Ahmed's cousins targeted other Bangladeshi landowners or that they held an animus against landowners at large—instead, they targeted only Ahmed, their paternal cousin who inherited land they believed should belong to them. *See Zaldana Menijar*, 812 F.3d at 501 (explaining that pervasive crime and violence "does not itself constitute persecution on account of a protected ground"); *Solis-Nolasco v. Holder*, 533 F. App'x 601, 604–05 (6th Cir. 2013) (per curiam) ("Mistreatment based on a land dispute does not fall under a

protected ground of the INA."); *Spaqi v. Holder*, 451 F. App'x 548, 553–54 (6th Cir. 2011) (holding that a blood feud relating to a land dispute was a "personal problem" insufficient to warrant asylum or withholding of removal).

Ahmed's only response is that the BIA and IJ did not make findings about nexus. He is mistaken. The IJ found that Ahmed did not establish that his cousins "sought to overcome" his status as a landowner. A.R. 36. The IJ reasoned that Ahmed's cousins wanted to take his plot of land, not "to interfere with the characteristic of his land ownership." *Id.* The IJ also determined that the physical assault "had nothing to do with the land"—Ahmed's cousins attacked him in retaliation for his police complaint. *Id.* at 34. The BIA affirmed these findings. It concluded that the IJ's factual determinations about the cousins' motivation were not clearly erroneous, as any harm Ahmed suffered was "for personal reasons, not on account of a protected ground." *Id.* at 4.

Because Ahmed did not show that his proposed social group was a reason for his alleged persecution, his asylum and withholding-of-removal claims fail.[2]

**IV.**

For these reasons, we **DENY** Ahmed's petition for review.

---

[2] To the extent that Ahmed pursues his CAT claim in his petition for review, we decline to consider it on the merits because, as the government argues, he failed to exhaust it before the BIA. *See Mazariegos-Rodas*, 122 F.4th at 664.