*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SELMA ALIZOTI,

*Petitioner,*

*v.*

ALBERTO GONZALES, Attorney General of the
United States,

*Respondent.*

Nos. 05-4493; 06-3067

>

On Appeal from the Board
of Immigration Appeals.
No. A95 216 016.

Argued: November 1, 2006

Decided and Filed: February 26, 2007

Before: MERRITT and BATCHELDER, Circuit Judges; HEYBURN, Chief District Judge.[*]

---

### COUNSEL

**ARGUED:** John S. Richbourg, Memphis, Tennessee, for Petitioner. Jennifer Keeney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** John S. Richbourg, Memphis, Tennessee, for Petitioner. Jennifer Keeney, Michelle Gorden Latour, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

HEYBURN, Chief D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. MERRITT, J. (pp. 6-8), delivered a separate dissenting opinion.

---

### OPINION

---

JOHN G. HEYBURN II, Chief District Judge. In a consolidated appeal, Petitioner Selma Alizoti appeals both the denial of her motion to reopen by the Board of Immigration Appeals ("BIA") and the denial of her motion to reconsider by the BIA. This is another difficult immigration case in which we must resist the temptation to impose our own sense of justice as if this were a *de novo* review. We AFFIRM the BIA on both matters.

---

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

I.

Petitioner is a native citizen of Albania and was admitted to the United States on a non-immigrant visa in August 2001. Petitioner overstayed her visa and was served with a notice to appear in September 2002. She conceded removability but filed for asylum, protection under the Convention Against Torture, withholding of removal, and voluntary departure in the alternative. An immigration judge ("IJ") denied these claims on January 7, 2003; the BIA affirmed that decision on May 31, 2005 but granted 30 days' voluntary departure. In the meantime, Petitioner married U.S. citizen Robert King on November 26, 2003, and King filed a Petition for Alien Relative (I-130) with the Department of Homeland Security ("DHS") on behalf of Appellant based on their marriage. DHS took no immediate action on the I-130. After the filing of the I-130 and on December 1, 2003, Petitioner filed a Application to Adjust Status (I-485) to a Permanent Resident with DHS. The I-485 should have been filed with the BIA as part of a motion to reopen because she was in immigration proceedings, which Petitioner discovered during a meeting with DHS on May 5, 2005 regarding her I-485. On that basis, the I-485 was denied.

On June 24, 2005, Petitioner timely filed a motion to reopen with the BIA, requesting that her case be reopened and remanded to the IJ for any further proceedings. Significantly, attached to her motion were the DHS notification regarding her May 5th interview with DHS, a copy of her (denied) I-485, and a copy of her I-94 showing her legal entry into the United States. On June 27, 2005, Petitioner filed with the BIA a sworn affidavit reciting the facts of her marriage and the mistaken filing of the I-485 with the DHS, and stating as fact that her I-130 had been approved. Petitioner evidently believed that her I-130 had been approved because DHS had conducted an interview with her regarding her I-485, which would be unusual if the underlying I-130 had not yet been approved. After being contacted by Petitioner's counsel, DHS approved King's I-130 on October 21, 2005.

On October 28, 2005, the BIA denied the motion to reopen because there had been no *prima facie* showing of eligibility for the relief sought because no approval of the I-130 had been attached to the motion to reopen. Petitioner appeals that decision (No. 05-4493). Significantly, during the BIA proceedings on the motion to reopen, DHS offered evidence that at least one of the statements made by Petitioner in her sworn affidavit was untrue: her I-130 had in fact not been approved at the time she swore out and filed her affidavit.

On November 16, 2005, Petitioner moved for the BIA to reconsider the denial of her motion to reopen, arguing her affidavit and attached I-485 were sufficient to entitle her to relief and that DHS had now found that her marriage was valid by approving the I130. The BIA denied the motion to reconsider on December 20, 2005, stating that the approval notice of the I-130 was new evidence which could not be considered in a motion to reconsider and that even if Appellant's motion were styled a motion to reopen with new evidence, that motion would be denied because it is a second motion to reopen, which is barred by statute and regulation. Petitioner also appeals that decision (No. 06-3067).

We have jurisdiction pursuant to 8 U.S.C. § 1252, which authorizes this Court to review final orders of removal. However, this Court lacks jurisdiction to review any issues that have not been raised and administratively exhausted below. *See* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). This Court reviews the BIA's denial of a motion to reopen for abuse of discretion. *I.N.S. v. Abudu*, 485 U.S. 94, 96 (1988); *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004). The Court also reviews the BIA's denial of a motion to reconsider for abuse of discretion. *Sswajje v. Ashcroft,* 350 F.3d 528, 532 (6th Cir. 2003). The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law. *Babai v. I.N.S.*, 985 F.2d 252, 255 (6th Cir. 1993). The Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or deny such motions. *I.N.S. v. Doherty*, 502 U.S. 314, 323

(1992).  Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a "heavy burden."  *Id.*

## II.

Petitioner first challenges the BIA's denial of her motion to reopen.  The BIA found that the evidence she presented in her motion to reopen failed "to establish a *prima facie* case of her statutory eligibility" for adjustment of status.  A *prima facie* showing of eligibility for relief is required in motions to reopen.  *See* 8 C.F.R. § 1003.2(c); *Yousif v. I.N.S.*, 794 F.2d 236, 241 (6th Cir. 1986) ("[A] motion to reopen should not be granted unless the petitioner makes a *prima facie* showing that the statutory requirements for the underlying relief have been met").  *Prima facie* evidence, according the BIA, is evidence that "reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Matter of S-V-*, 22 I & N Dec. 1306, 1308 (BIA 2000). According to 8 C.F.R. § 1003.2(c)(1), a petitioner filing a motion to reopen for adjudication of her adjustment of status application must submit a completed application and "all supporting documentation."  *See also Konstantinova v. I.N.S.*, 195 F.3d 528, 530 (9th Cir. 1999) (stating that "a completed application for the relief being sought through a motion to reopen . . . is required, alongside 'all supporting documentation'").

Here, Petitioner presented evidence that raised questions about whether she could establish a *prima facie* case of eligibility for relief.  She submitted the DHS notification regarding her May 5th interview with DHS, a copy of her (denied) I-485, a copy of her I-94 showing her legal entry into the United States, and a sworn affidavit reciting the facts of her marriage.  However, she failed to include a variety of documentary evidence the BIA could have considered on the motion to reopen: any documentary evidence that her husband was a United States citizen, any documentary evidence that Petitioner and King were married, or any documentary evidence that the visa petition had been filed, much less approved.  Furthermore, DHS presented evidence that at least one portion of Petitioner's sworn affidavit was untrue (where she stated unequivocally that her I-130 had been approved).  On this record, we cannot conclude that the BIA abused its discretion when it found that Petitioner failed to present a *prima facie* case for relief in her motion to reopen.

## III.

Petitioner next challenges the denial of her motion to reconsider.  As part of her motion to reconsider, Petitioner included the notice of approval of her by-then-approved I-130.  Section 240 of the Immigration and Nationality Act ("INA") states that motions to reconsider "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority."  8 U.S.C. § 1229A(c)(6)(C).  The purpose of a motion to reconsider is not to present new evidence, but rather to provide an opportunity for the petitioner to argue that the IJ or BIA erred as a matter of law or fact.  *See, e.g.*, *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1180 n.2 (9th Cir. 2001).

However, when new evidence is submitted as part of a motion to reconsider, the BIA construes such motions as motions to reopen.  *See Matter of Cerna*, 20 I & N Dec. 399, 400 (BIA 1991) (noting that when a motion seeks the opportunity to submit evidence that was not previously a matter of the record, it is properly construed as a motion to reopen, whereas when a motion alleges specific errors in the previous decision, it is properly construed as a motion to reconsider).  If the BIA were to consider new evidence as part of Petitioner's motion to reconsider, Petitioner's motion would be a second motion to reopen, which is barred by statute and regulation.  *See* 8 U.S.C. § 1229A(c)(7)(A) ("An alien may file *one motion to reopen proceedings* under this section . . . .) (emphasis added); 8 C.F.R. § 1003.2(c)(2).  As it turns out, when the BIA denied Petitioner's motion to reopen, it may have been incorrect in presuming that Petitioner's marriage was invalid and that she was guilty of an intentional misstatement of fact when she indicated that her I-130 had been

approved, but that error could be corrected in this case *only by the consideration of new evidence* (i.e., the notice of approval of the I-130), which is not allowed as part of a motion to reconsider.

Petitioner further argues that the BIA should have considered her motion to reconsider as a supplement to her initial motion to reopen. Such an approach may have been reasonable and within the BIA's discretion. However, that discretion vests firmly with the BIA in these circumstances, and our review is limited to a determination of whether that discretion was abused. Our standard for making that determination is not new:

> In determining whether the Board abused its discretion, this Court must decide whether the denial of Petitioner's motion to reopen deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.

*Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982). Nor has that standard changed. *See Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (quoting *Balani*). Here, the Board's decisions follow exactly the requirements of the applicable statute, regulations, and case precedent. That a different decision would also have been within the Board's discretion cannot suffice to render this decision an abuse of discretion. The circumstances of the cases Petitioner cites to the contrary are entirely different from the circumstances here. In both *Guzman v. I.N.S.*, 318 F.3d 911 (9th Cir. 2003), and *Wang v. Ashcroft*, 260 F.3d 448 (9th Cir. 2001), the issue was whether a second motion filed *while the first motion was pending* should be considered a supplement to the first. *Guzman*, 318 F.3d at 913; *Wang,* 260 F.3d at 452. Here, the BIA had issued a decision on Petitioner's first motion to reopen some two weeks prior to her filing of the second, and it would have been unusual–at the least–for the BIA to consider her motion to reconsider the motion to reopen as actually being a supplement to that first motion.

Petitioner correctly asserts that the BIA has the discretion to waive procedural defects in the filing of motions. *See, e.g.*, *Matter of Yewondwosen*, 211 I & N Dec. 1025 (BIA 1997). Indeed, as the dissent argues, this case seemingly cries out for a common sense waiver of procedural defects. However, that discretion vests firmly with the BIA in these circumstances, and we should be careful not to disturb the exercise of it. To do otherwise would require this Court to conduct a *de novo* review, rather than reviewing for abuse of discretion as long-established precedent requires. In the short run, we may satisfy a sense of justice, while in the long run bringing chaos to the review process.

IV.

Finally, Petitioner argues that DHS' and the BIA's actions denied her due process and that this Court should apply the theory of equitable estoppel in light of her allegations that DHS took an excessively long time to approve the I-130 and that DHS failed to comply with its own procedures by conducting an I-485 interview prior to approving the relevant I-130. However, because Petitioner failed to raise both the due process and equitable estoppel arguments below, she cannot now do so. *See Ramani*, 378 F.3d at 560 (holding that "only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal"); *Sswajje*, 350 F.3d at 533 (ruling that petitioner could not bring ineffective assistance claim at circuit court level "because he did not raise it in the BIA proceedings"); *Harchenko v. I.N.S.*, 22 Fed.Appx. 540, 543 (6th Cir. 2001) (holding that court lacks jurisdiction over issues not raised before the BIA). *See also* 8 U.S.C. § 1252(d)(1) (stating that a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right").

V.

For the foregoing reasons, we must DENY Selma Alizoti's petitions for review of the BIA orders in Case Nos. 05-4493 and 06-3067.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. The Court is correct to point out that this case "cries out for a common sense waiver of procedural defects" (Section III, last paragraph) in order to correct the BIA's error "in presuming that Alizoti's marriage was invalid and that she was guilty of an intentional misstatement." But the Court then regards its authority as so narrow — indeed, almost nonexistent — that it cannot correct the injustice that the administrative process has itself brought about. The purpose of vesting jurisdiction in this Court to correct errors includes this kind of fundamental error on which a deportation order turns.

The administrative process has failed in three ways in this case. The first two errors were made by Homeland Security before the BIA got the case. The third error is the result of a mistake on the part of the BIA, a mistake it then refused to acknowledge and correct. *First*, Alizoti's sworn statement that she had received approval of her I-130 form (seeking approval of her marriage as valid) was entirely reasonable and based on the normal sequence of steps followed by Homeland Security, *i.e.*, that an adjustment of status interview based on an I-485 form follows and does not precede the I-130 approval. *Second*, Alizoti's failure to demonstrate earlier in the BIA proceedings her valid marriage and adjustment of status was entirely the fault of Homeland Security and not in any way her fault. *Third*, the "reopening" and "reconsideration" statute (8 U.S.C. § 1229(a)(6)(C)) clearly allows a motion to reconsider to "specify errors of law *or fact* in the previous order" as "supported by pertinent authority" or documentation. The motion to reconsider here showed an error of fact and law (the Board's assumption that she did not have a valid marriage, a mistake based on the Board's refusal to administratively notice an official decision to the contrary by an officer of the Department of Homeland Security).

As to the first point, the Department of Homeland Security did not follow its own procedures. On February 23, 2004, Alizoti's husband filed the requisite Petition for Alien Relative Form (I-130) with the Department of Homeland Security along with their marriage certificate dated November 26, 2003 (App. p. 18). This I-130 form is the one used to prove a valid marraige and provide the basis for permanent residency. With this filing Alizoti also filed an Application for Adjustment of Status Form (I-485) for permanent residency. Based on these filings, Alizoti and her husband were notified by the Department of Homeland Security a year and three months later on May 5, 2005, to appear for an interview *regarding her Adjustment of Status Form*. Alizoti clearly and satisfactorily explains that she based her assumption of approval of the I-130 form on the interview conducted by the Department of Homeland Security. (Petitioner's Brief at 17-18.) The interview was called based on her I-485 Petition for Adjustment of Status. Normally, the Department of Homeland Security does not conduct an interview for the I-485 Application to Adjust Status unless the I-130 marriage petition has already been approved. This procedural sequence is logical since the valid marriage proven through the I-130 form would be the basis even to consider an adjustment of status to permanent residency. In Alizoti's case, however, the Department of Homeland Security did not follow its proper procedures and failed to act on her I-130 petition before it conducts its I-485 interview for the adjustment of status. As a result, Alizoti unfortunately made the assumption that the Department of Homeland Security treated her case just as they would any other similar immigration case.

As to point two, she was late in filing with the BIA the approved I-130 marriage petition only because Homeland Security delayed from February 2004 to October 2005, in approving this form. If Homeland Security had acted promptly, none of these problems would have occurred. There would have been no misstatement concerning the I-130 marriage approval and no delay on her part

in promptly filing this form with the BIA. The whole problem arose as a result of the delay on the part of Homeland Security.

As to the third point, the BIA on the motion to reconsider stubbornly and without individual consideration of the case or the above facts, ruled that it does not make any difference that Alizoti is in no way at fault and that she all along had a valid marriage and was eligible for adjustment of status. The statute[1] is designed to allow on motions to reconsider the correction of errors of fact like the one in the present case. Subsection (6) says such motions should "specify the errors of law or fact" to be corrected. The BIA in its earlier order, App. p. 23, presumes lack of a valid marriage and presumes that Alizoti is guilty of an intentional misstatement of fact. Both of these errors are the kind of "error of fact" that the motions to "reconsider" provision and the motion to "reopen" provision of the statute are designed to correct by the filing of supporting documentation. This is simply a case of inertia or inattention on the part of the BIA. It is the product of the refusal to give individual treatment to the individual case, the very process that the statutes and the motion to reconsider provision is designed to foster and the appellate review process is designed to catch and reverse.

Our Court thinks that these BIA "reopening" and "reconsideration" cases address themselves to the pure and complete discretion of the BIA, a discretion we do not have the authority to disturb. I do not agree. In this case, the Dept. of Homeland Security approved Alizoti's I-130 one week before the BIA denied her motion to reconsider. The BIA should have, but refused to, administratively notice on the motion to "reconsider" this official decision by an immigration review officer of the Department of Homeland Security that Alizoti has a valid marriage and is eligible for adjustment of status. The BIA clearly has a duty of administrative notice[2] to recognize this official decision as a "pertinent authority" under § 1229a(6). Its refusal to do so violates the statute, is clearly a matter of statutory construction, and should be given *de novo* review by our Court.

Although it is true that Alizoti can start the immigration process all over again with the State Department through the American Embassy in Tirana, Albania, this process will most likely take several years. Deporting Alizoti is particularly misguided because it is mainly the government's

---

[1]Subsections (6) and (7) of § 1229a state:

(6) Motions to reconsider
(A) In general
The alien may file one motion to reconsider a decision that the alien is removable from the United States.
(B) Deadline
The motion must be filed within 30 days of the date of entry of a final administrative order of removal.
(C) contents
The motion shall *specify the errors of law or fact* in the previous order and shall be supported by pertinent authority.

(7) Motions to reopen
(A) In general
An alien may file one motion to reopen proceedings under this section . . . .
(B) Contents
The motion *to reopen shall state the new facts* that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.

(Emphasis added.)

[2]8 C.F.R. 1003.1(d)(3)(iv) provides, "Except for taking administrative notice of commonly known facts such as current events or *the contents of official documents*, the Board [of Immigration Appeals] will not engage in factfinding in the course of deciding appeals." (Emphasis added.) This regulation clearly recognizes that the Board has the power to take administrative notice of official documents, such as Alizoti's approved I-130.

fault that she did not originally make a prima facie case that she was eligible for permanent residency. The reason her I-130 form had not been approved yet was because the Department of Homeland Security failed to issue any ruling for almost two years.

Because there is a strong public interest in bringing immigration cases to a close, we should settle this matter now instead of handing it over to the State Department for another round and several more years of work and effort via the U.S. Embassy in Albania. If our Court's treatment of this poor woman's case is representative of the type of non-review the Article III Courts are going to give to immigration cases, Congress may as well repeal judicial review as a waste of everyone's time, money and effort.