NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0236n.06

No. 17-3946

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARCELINO GOMEZ, | ) | **FILED** |
|  | ) | May 08, 2018 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON PETITION FOR REVIEW |
|  | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, U.S. Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

Before: CLAY, STRANCH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Marcelino Gomez, a citizen of Mexico subject to removal from the United States, seeks cancellation of removal and withholding of removal. The immigration judge (IJ) rejected both claims, and the Board of Immigration Appeals (BIA) affirmed and dismissed his appeal. In his petition for review, Gomez argues (1) that the BIA erred in affirming the IJ's finding that Gomez had not established ten years' continuous physical presence in the United States because he offered only his own testimony to establish his presence during some years, and (2) that the BIA erred in affirming the IJ's conclusion that Mexicans returning to Mexico after spending time in the United States are not a cognizable particular social group. Both of Gomez's claims are foreclosed by precedent; therefore, we DENY his petition for review.

I.

Gomez is a citizen of Mexico who claims that he first entered the United States in June 2001. On October 31, 2011, he was served with a Notice to Appear charging him with being present in the United States without being admitted. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Gomez sought relief from removal on two grounds: (1) cancellation of removal for certain nonpermanent residents due to the extreme and unusual hardship that his daughter, a United States citizen, would face if he returned to Mexico, and (2) withholding of removal due to his fear of persecution in Mexico on the basis of membership in a particular social group.

At a preliminary hearing, the IJ informed Gomez that "[i]n order to qualify for cancellation, you have to establish through evidence—which are witnesses and documents—that you have been in the United States for 10 years." When asked, Gomez stated that he would need five months to hire an attorney, fill out the application for cancellation of removal, and gather his supporting documents. The IJ then continued Gomez's case for five months and again instructed Gomez "to come back with the application and all of your documents completed."

At his hearing on the application, the government conceded that Gomez had established through supporting documentation his physical presence "dating back to 2004."[1] The question remained whether Gomez had been present in the United States since at least October 2001. Gomez testified that he entered the United States in June 2001 and that he remembered learning

---

[1] Gomez did not dispute the government's characterizing his documentary evidence as dating back to 2004. Nor does Gomez now contest the BIA's claim that he "did not submit any documentary proof for the years 2001–2003." Our review of the record indicates that Gomez had attached to his application for cancellation of removal a document that supported his physical presence in the United States as early as June 2003, though he submitted the document as part of his "Proof of Good Moral Character" and not as "Proof of Continuous Physical Presence." We need not decide, however, whether Gomez established his physical presence as early as June 2003, as this document might support, or only as of 2004, as the IJ and BIA determined, because Gomez was required to establish his physical presence as of October 2001.

of the events of September 11, 2001, when he was with friends in Chattanooga, Tennessee. When asked by his attorney, Gomez stated that there was no one with whom he was still in contact who could confirm his presence in the United States at that time. Gomez proffered three witnesses to support his continuous-presence claim, but none could speak to his presence in the United States before 2004.[2] Consequently, the IJ pretermitted Gomez's application for cancellation of removal, holding that Gomez had not shown the requisite ten years' continuous physical presence in the United States.[3] As to Gomez's application for withholding of removal, the IJ held that individuals who are likely victims of being kidnapped due to their perceived wealth after having spent time in the United States are not a cognizable particular social group and denied the application.

The BIA dismissed Gomez's appeal. It noted that, unlike for years 2004 through 2011, Gomez had not submitted documentary corroboration of his physical presence in the United States for years 2001 through 2003.[4] Accordingly, the BIA held that "based on the lack of corroboration, cancellation of removal was properly pretermitted on this ground." It also rejected Gomez's argument that the IJ's pretermission of his application violated his right to due process. Finally, the BIA upheld the IJ's determination that Gomez had not demonstrated that he

[2] Two witnesses testified at the hearing: Angela Kishaw, who was Gomez's child's maternal grandmother, and Tony Oliver, Kishaw's partner. Both testified that they had met Gomez around 2004 and that they did not know when Gomez entered the United States. Gomez also proffered Mayra Varahona but, after admitting that she could only speak to Gomez's presence in the United States during the previous five years, did not call her to testify.

[3] The IJ also held that Gomez's conviction for patronizing a prostitute made him ineligible for cancellation of removal. The BIA did not consider this ground for pretermission on appeal; therefore, we do not consider it in reviewing the BIA's decision.

[4] As discussed above, our review of the record indicates that Gomez had provided documentation attesting to his presence as early as June 2003. This minor discrepancy in the BIA's characterization of the evidence that Gomez provided, however, is irrelevant, because Gomez does not contest the BIA's conclusion, and our review of the record reveals that he did not provide any corroborating evidence from 2001 to June 2003.

was a member of a cognizable particular social group. Gomez petitions for review of the BIA's decision.

## II.

Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review questions of law de novo, "but we give substantial deference to the BIA's interpretations of the [Immigration and Nationality Act (INA)] and its accompanying regulations." *Kukalo v. Holder*, 744 F.3d 395, 399 (6th Cir. 2011) (citation omitted). We review the factual findings of the BIA and the IJ under the substantial-evidence standard, *Khalili*, 557 F.3d at 435, including the determination that an alien has failed to demonstrate a continuous physical presence in the United States, *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 705 (6th Cir. 2005). Under the substantial-evidence test, we reverse a factual determination only if we "find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *INS v. Elias-Zacarias*, 502 U.S. 478 (1992)).

To be eligible for cancellation of removal, Gomez was required to show, among other things, continuous physical presence in the United States for ten years. 8 U.S.C. § 1229b(b)(1)(A). In making this calculation, Gomez's "presence" in the United States ceased to accrue when he was served a Notice to Appear commencing removal proceedings. 8 U.S.C. § 1229b(d)(1). The Notice to Appear was served on October 31, 2011; therefore, Gomez was required to prove his continuous physical presence in the United States beginning on October 31, 2001. The BIA upheld the IJ's conclusion that Gomez had not shown his physical presence from 2001 through 2003.

Gomez argues that he established his physical presence from 2001 through 2003 with his own testimony. He testified that he arrived in the United States around June 2001 and that he remembered being with friends in Chattanooga, Tennessee, on September 11, 2001. Gomez's own attorney then asked him if anyone could confirm that he was in the United States around September 2001, and Gomez testified that there was no one with whom he was still in touch who could place him in the United States at that time.

In *Santana-Albarran*, the alien's evidence consisted of his own testimony and back tax returns that had been submitted after the commencement of removal proceedings. 393 F.3d at 706. We rejected the alien's argument that his back tax returns corroborated his own testimony given their unreliability in that case. *Id.* at 705–06. Considering the lack of corroboration, we held that the alien's own testimony did not compel reversing the IJ's finding that the alien had not established his continuous physical presence in the United States. *Id.* at 706. We recognized that "an illegal alien, whose manifest aim is to avoid detection, will encounter difficulty providing documentation of his continued presence within the United States for the past decade. Therefore, permissible evidence demonstrating a continuous physical presence should be broadly defined." *Id.* at 705. We listed possible corroborating evidence:

> (1) past employment records, including pay stubs, W-2 forms, certifications of the filing of income tax returns, or letters from employers; (2) utility bills; (3) school records; (4) hospital or medical records; (5) attestations by churches, unions, or other organizations; and (6) additional documents, including passport entries, birth certificates of children born in the United States, letters or correspondence, contracts, government-issued identification cards, or any other relevant document.

*Id.* (citing 8 C.F.R. § 245a.2(d)(3)). But, we held, when a petitioner fails to provide any reliable corroboration, we are not compelled to reverse an IJ's finding that the petitioner had not established his continuous physical presence. *See id.* at 706. Here, Gomez relies solely on his own testimony to support his claim that he was physically present in the United States during

part of the requisite ten-year period.[5]   Under our precedent, this is insufficient to command

reversal.[6]   The evidence in the record—consisting solely of Gomez's testimony—does not

compel a conclusion different from that of the BIA on the issue of continuous physical presence.

Gomez also argues that the pretermission of his application for cancellation of removal

violated due process, but Gomez does not have a protected liberty interest in the discretionary

cancellation of removal.  *See Patel v. Gonzales*, 470 F.3d 216, 220 (6th Cir. 2006) (holding that

"[t]he failure to be granted discretionary relief . . . does not amount to a deprivation of a liberty

interest" (alteration in original) (quoting *Ali v. Ashcroft*, 366 F.3d 407, 412 (6th Cir. 2004)));

*Patel v. Ashcroft*, 401 F.3d 400, 404 (6th Cir. 2005) (describing cancellation of removal as "a

remedy that is discretionary at all events").  Accordingly, he cannot establish a due process

violation.  U.S. Const. amend V; *Patel*, 470 F.3d at 220.

---

[5] Gomez has not claimed that corroborating evidence was not reasonably available.  *See* 8 U.S.C. § 1229a(c)(4)(B) ("Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.").  He instead states, in conclusory fashion, that providing physical evidence to prove ten years' physical presence would be difficult.  That is insufficient to meet the statutory standard.

[6] Gomez invites us to decide whether *Santana-Albarran* requires documentary corroboration of an alien's claim of continuous presence in the United States, or whether testimonial corroboration would have been sufficient to compel us to reverse the factual findings made below.  We need not address the question because Gomez provided no corroboration at all. Gomez points to a Ninth Circuit case, *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847 (9th Cir. 2004), which contains language that might be read to suggest that credible, yet uncorroborated, testimony by an alien alone could be sufficient to establish his continuous presence.  But, of course, we are bound by our own caselaw, not the Ninth Circuit's, and the clear law of this Circuit is that corroboration is required to compel reversal.  *Santana-Albarran*, 393 F.3d at 706; *see also Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010) ("Thus, under the REAL ID Act, if the agency determines that an applicant should provide corroborating evidence, even if the applicant is found credible, corroborating evidence is required unless the applicant cannot reasonably obtain that evidence, and we are bound to uphold a finding that corroborative evidence is available unless compelled otherwise.").  And, in any event, we think Gomez overreads *Lopez-Alvarado*, because, in that case, three witnesses in fact corroborated the alien's testimony.

III.

Finally, Gomez argues that the BIA erred in affirming the IJ's denial of his application for withholding of removal. An alien is entitled to withholding of removal to a particular country if he shows that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 208.16(b). In his application for withholding of removal, Gomez claimed that he was afraid to return to Mexico because "[t]hey could kidnap a family member because they may think that I have money because I lived in the United States. I believe people think I have a lot of money because I have live[d] in this country for so long." The IJ determined that "returning Mexicans who are perceived to be wealthy" are not a cognizable particular social group. The BIA affirmed and dismissed Gomez's appeal.[7]

We have previously considered and rejected Gomez's argument. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (collecting cases). As we have done on numerous occasions, we again reject the argument that "individuals who are likely victims of being kidnapped due to time spent in the United States" because of their perceived wealth are a cognizable particular social group under the INA. We, therefore, hold that the BIA did not err in upholding the IJ's determination that Gomez failed to show that he faces persecution on account of membership in a particular social group.

---

[7] To the extent that Gomez attempts to redefine his purported particular social group in this Court—by stating that Mexicans returning to Mexico from the United States are perceived not only as wealthy but also as "more likely to resist and threaten the[] power" of persecutors—he did not raise that argument in front of the IJ or the BIA. We therefore do not consider Gomez's argument that Mexicans returning to Mexico are perceived as "more likely to resist and threaten the[] power" of unspecified persecutors. *See Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) ("[T]his Court lacks jurisdiction to review any issues that have not been raised and administratively exhausted below." (citing 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004))).

* * *

We DENY Gomez's petition for review.