NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0035n.06

Case No. 22-3045

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>OSWALDO CHAVEZ-ACOSTA</td><td>)</td><td rowspan="11"></td></tr>
<tr><td>Petitioner,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MERRICK B. GARLAND, Attorney General,</td><td>)</td></tr>
<tr><td>Respondent.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Jan 18, 2023
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

O P I N I O N

Before: COLE, NALBANDIAN, and READLER, Circuit Judges.

COLE, Circuit Judge. Oswaldo Chavez-Acosta seeks review of a final order from the Board of Immigration Appeals ("BIA") denying his combined motion to reopen and reconsider his removal proceedings. Chavez-Acosta argues that his case should be reopened and remanded to the Immigration Judge ("IJ") for a competency hearing; and that his case should be reconsidered because the IJ relied on two now-vacated decisions. Because the BIA and IJ did not abuse their discretion in analyzing Chavez-Acosta's credibility, and any potential reliance on vacated caselaw is harmless error, we deny the petition for review.

## I. BACKGROUND

Chavez-Acosta is a native and citizen of Mexico. He entered the United States on October 4, 2001. After living in the United States for over a decade without once leaving the country, the Department of Homeland Security ("DHS") served Chavez-Acosta with a notice to appear on October 16, 2012. DHS charged him as a noncitizen present in the United States without having

been admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). He was arrested and released on bond on the same day.

Chavez-Acosta appeared before the IJ with counsel on June 19, 2013, at which point he conceded his removability and also submitted his I-589 application for withholding of removal and protection under the Convention Against Torture ("CAT"). The IJ held a merits hearing on Chavez-Acosta's claims for relief on February 25, 2020. Chavez-Acosta was represented by counsel at the hearing, which took place with a translator as Spanish is Chavez-Acosta's preferred language.

## A. Background

The main facts for Chavez-Acosta's application come from his I-589 form and his testimony at his merits hearing, as he was the sole individual who testified at the hearing. He began by testifying about his military service in Mexico, because his claims for relief rely on his military service. Chavez-Acosta testified that he served in the Mexican military from when he was 17 years old until he was 19 years old. During this time, he was a soldier without any specific title or position, and when asked by his counsel if he received weapons training, he responded in the affirmative. Chavez-Acosta testified that while in the military, the cartel—name unknown to Chavez-Acosta—threatened him twice. Both times, four people tried to recruit him to the cartel to assist with distributing drugs and killing people and threatened to kill him if he refused. Chavez-Acosta said he did not report these threats to anyone in the military because there were many cartel members in the military, nor to the police because the police work for the cartel. And he testified that he knew others in the military who were similarly threatened, and that as of the merits hearing, these individuals were dead. Two or three months after the second threat, Chavez-Acosta said he

left the military. After that, he was threatened once more by a different person who may have been in another cartel, and then he entered the United States.

Chavez-Acosta stated that since arriving in the United States, he has not been threatened by any Mexican cartel. But he testified that his mother, who lives in Mexico, has been threatened by cartel members, who told her to turn in Chavez-Acosta and that they would kill Chavez-Acosta unless he returns and joins the cartel. His mother submitted a statement to the court, but did not include any reference to threats she had received. Lastly, Chavez-Acosta testified that he was scared that the cartel would target him again if he returned to Mexico, because his hometown is small and because even if he were to live elsewhere in Mexico, "at the end they're going to know [he is] there." (A.R. 184.) He has several brothers and sisters who currently live in Mexico, and none have received any threats or been harmed. The government only asked Chavez-Acosta one question, whether he had ever been physically harmed in Mexico, to which he responded that he had not.

The testimony above is at times in conflict with Chavez-Acosta's written application form. There, Chavez-Acosta wrote that the "Zetas gang" had been targeting individuals with "military skills" for recruitment efforts, and that he had received two calls from them in 2011, after he came to the United States, threatening that they would kill his family if he did not join the Zetas gang. (A.R. 265.) He was consistent that his mother has been threatened by the gang while he has been in the United States, and he further elaborated that he knows of two other military members from his town who "disappeared" after refusing to join the Zetas. (*Id.*) He was also more specific about his military service, writing that he was in the military from November 2000 until November 2001, when he entered the United States. In the application, he more explicitly makes the point that he believes he is being targeted by the Zetas for his military skills.

**B. Immigration Proceedings**

On the same date as the merits hearing, the IJ ruled on Chavez-Acosta's application, denying his application for withholding of removal and protection under CAT and granting him voluntary departure upon payment of his bond. In so holding, the IJ first found that Chavez-Acosta was not credible for four reasons: (1) his testimony was "vague and undetailed"; (2) his testimony differed from his written application answers; (3) he did not provide "meaningful corroboration" of either his military service or the threats; and (4) "the court finds the respondent's testimony implausible." (A.R. 130–31.)

Alternatively, the IJ held that even if it had found Chavez-Acosta credible, he would still not be entitled to relief on either ground as he was unable to satisfy the requirements for his applications. As to the withholding of removal application, the IJ identified his particular social group ("PSG") as "former military members who are recruited by gangs." (A.R. 131.) The IJ held that Chavez-Acosta was not entitled to withholding of removal based on this PSG because of the lack of corroboration of Chavez-Acosta's military service and because Chavez-Acosta had not presented evidence to show that gangs recruited individuals from the military differently from how gangs recruit other individuals. So, the IJ concluded, "the gang recruitment decisions of the Sixth Circuit directly apply to this case and foreclose the relief." (*Id.*) Additionally, the IJ found that Chavez-Acosta had not submitted enough evidence to support the conclusion that he would face harm if he returned to Mexico, which he was required to do because he had not shown past persecution. As to protection under CAT, the IJ held that Chavez-Acosta was not entitled to relief because he had not provided sufficient evidence to establish past harm nor that the Mexican government—or the gangs, with the government's consent—would torture him upon his return.

Chavez-Acosta timely appealed the IJ's decision to the BIA. The BIA dismissed the appeal, finding that the adverse credibility determination was not clearly erroneous and affirming the IJ's denial of withholding of removal and protection under CAT for the reasons the IJ set forth.

Chavez-Acosta did not appeal the BIA's initial decision, but subsequently filed a timely motion to reopen and reconsider with the BIA. Chavez-Acosta argued that the IJ's adverse credibility finding was improper because of incompetency caused by past head trauma affecting his memory, the trauma of a knife attack by an ex-girlfriend, and his father's recent passing—all of which the IJ was unaware of at the time of its decision. To correct this flaw, Chavez-Acosta asked for remand so the IJ could reassess Chavez-Acosta's credibility in light of his mental state and determine whether Chavez-Acosta required additional safeguards throughout the proceedings. He also argued that the revocation of *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*Matter of A-B- I*"), and *Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019) ("*Matter of L-E-A- II*"), in their entirety necessitated reconsideration of his claims, because the IJ had relied on the now revoked caselaw in denying his withholding of removal claim.

The BIA denied the motion to reopen and reconsider. Regarding Chavez-Acosta's claim on the adverse credibility finding, the BIA held that he had not submitted sufficient evidence to show he was not competent to participate in the proceedings. The BIA then denied reconsideration of the withholding of removal application because Chavez-Acosta had not proffered the necessary evidence to meet all the requirements of the statute—regardless of his competency and the revocation of *Matter of A-B- I* and *Matter of L-E-A- II*—and that the IJ and the BIA had not relied on the revoked cases in making their decision. Chavez-Acosta timely filed a petition for review to appeal the BIA's denial of the motion to reopen and reconsider.

## II.  ANALYSIS

We review denials of motions to reopen and motions to reconsider for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007).  An abuse of discretion has occurred when the "the BIA's decision 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Dieng v. Barr*, 947 F.3d 956, 960–61 (6th Cir. 2020) (quoting *Alizoti*, 477 F.3d at 453).  Chavez-Acosta bears a "heavy burden" because the BIA holds "broad discretion" when considering motions to reopen or reconsider.  *Alizoti*, 477 F.3d at 451 (citing *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992)).

Chavez-Acosta applied for both withholding of removal and protection under CAT.  To obtain withholding of removal, a noncitizen must show that their "life or freedom would be threatened" in the country to which they are facing removal.  8 U.S.C. § 1231(b)(3).  The noncitizen retains the burden of proving that his life or freedom would be endangered "on account of" the alleged PSG.  8 C.F.R. § 208.16(b).  Such endangerment can be shown by past persecution or future threats to their life or safety.  *Id.* § 208.16(b)(1)–(2).  As to future threats, the individual must provide evidence showing that they "would be singled out individually for such persecution," unless they are able to establish a pattern or practice of persecution of a group of similarly situated individuals.  *Id.* § 208.16(b)(2)(i).  If the IJ finds that the noncitizen can avoid the future threat by relocating within the proposed country of removal, the noncitizen is ineligible for relief.  *Id.* § 208.16(b)(2).  And where the persecutor is not the government, the noncitizen bears "the burden of establishing that it would not be reasonable for him or her to relocate[.]"  *Id.* § 208.16(b)(3)(i).  To obtain protection under CAT, the noncitizen must show "it is more likely than not that

he . . . would be tortured if removed." *Marouf v. Lynch*, 811 F.3d 174, 179 (6th Cir. 2016) (quoting

*Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007)).

## A. Competency

Chavez-Acosta argues against the IJ's adverse credibility finding on the basis of mental

incompetency, and claims that remand to the IJ is necessary for a competency hearing to assess

the level of safeguards needed to ensure due process throughout the immigration proceedings.

Particularly, within the asylum context, the BIA has signaled that the IJ "should, as a safeguard,

generally accept [the noncitizen's] fear of harm as subjectively genuine based on the applicant's

perception of events" if there are competency issues affecting the reliability of the noncitizen's

testimony. *Matter of J-R-R-A-*, 26 I. & N. Dec. 609, 609–10 (BIA 2015).

Noncitizens are entitled to due process under the Constitution in removal proceedings.

*Reno v. Flores*, 507 U.S. 292, 306 (1993). That includes the right to a full and fair hearing. *See*

*Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982). There is a presumption of competency in

immigration proceedings. *Matter of M-A-M-*, 25 I. & N. Dec. 474, 477 (BIA 2011). "Absent

indicia of mental incompetency, an Immigration Judge is under no obligation to analyze [a

noncitizen's] competency." *Id.* No statute or regulation provides the process through which an IJ

should assess the competency of a noncitizen, and so the BIA's decision in *Matter of M-A-M-* sets

out the governing framework. *Id.* at 478.

"[T]he test for determining whether [a noncitizen] is competent to participate in

immigration proceedings is whether he or she has a rational and factual understanding of the nature

and object of the proceedings, can consult with the attorney or representative if there is one, and

has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Id.*

at 479. Indicia of incompetency "include a wide variety of observations," such as "the inability to

understand and respond to questions, the inability to stay on topic, or a high level of distraction." *Id.* The record might reveal such indicia, including in "medical reports[,] . . . testimony from medical health professionals," and records from "other relevant sources, such as school records . . . and affidavits or testimony from friends or family members" *Id.* at 479–80.

Chavez-Acosta argues that the record reveals indicia of his incompetency—that his testimony was "scattered and problematic"—which warrants a competency hearing. He raises several points, with the most salient being that, after testifying he entered the United States in 2001, he insisted he was in the Mexican military from 2017 until 2019. Immediately acknowledging the implausibility of this answer, the IJ asked Chavez-Acosta's attorney to "try that again" to get at the right answer, which is that he served from age 17 to 19. Chavez-Acosta also cites generally to how he "struggled to remember details from his time in Mexico and at times appeared not to understand the questions asked of him." (Petitioner Br. 17.) He claims his incompetence is due to his "trouble focusing" because of his father's passing a week before the hearing, memory loss from the physical and emotional trauma of a knife attack initiated by his ex-girlfriend, and multiple head traumas. As corroborating evidence, Chavez-Acosta submitted his father's death certificate and a medical receipt from hospitalization due to one of his childhood head traumas.

The BIA denied the motion to reopen and remand the case for a competency hearing, finding that Chavez-Acosta had "not submitted persuasive medical evidence or other documentation indicating" his lack of competency to participate in the proceedings. (A.R. 4.) The BIA further noted that Chavez-Acosta was represented by counsel during the hearing, who did not raise concerns about Chavez-Acosta's competency to the IJ or the BIA on direct appeal. In addition to a lack of corroborating evidence, the BIA cited to an out of circuit case holding that

"[c]omplaints of poor memory, without evidence of an inability to understand the nature and object of the proceedings, are insufficient to show mental incompetency." (A.R. 4 (citing *Salgado v. Sessions*, 889 F.3d 982, 985 (9th Cir. 2018)).)

Considering the transcript and the exhibits attached in the motion to reopen, the BIA found no indicia that Chavez-Acosta was unable to understand the proceedings. This decision is properly within the bounds of the BIA's broad discretion: it was made with "a rational explanation," it does not "inexplicably depart[] from established policies," and it does not "rest[] on an impermissible basis such as invidious discrimination against a particular race or group." *Dieng*, 947 F.3d at 960–61 (quoting *Alizoti*, 477 F.3d at 453). As such, the BIA did not abuse its discretion, and we do not disturb this holding.

Chavez-Acosta argues that a recent Attorney General decision regarding the IJ's consideration of mental health in removal proceedings compels a different result. (Petitioner Br. 18–19 (citing *Matter of B-Z-R-*, 28 I. & N. Dec. 563 (A.G. 2022)).) But, as Chavez-Acosta concedes, the context of that case—related to whether noncitizens with criminal convictions for serious crimes constitute dangers to the community—is inapplicable to the instant case, where Chavez-Acosta has never been convicted of a crime. *See Matter of B-Z-R-*, 28 I. & N. Dec. at 563, 565. This therefore does not alter our conclusion that the BIA did not abuse its discretion.

It is worth noting that both the IJ and the BIA explicitly found that even if they presumed Chavez-Acosta was credible, they still would have held that he did not properly demonstrate his eligibility for withholding of removal or protection under CAT. *See supra* Part I.B. Chavez-Acosta does not present new evidence regarding the eligibility requirements of protection, such as why he would face harm even if he were to move to a different part of Mexico. So even if a

competency hearing theoretically led to a positive credibility determination, Chavez-Acosta still would not be granted withholding of removal or protection under CAT.

Ultimately, the BIA did not abuse its discretion in denying Chavez-Acosta's motion to reopen for a competency hearing, and we deny the petition for review on this ground.

## B. Change in Law

Chavez-Acosta also argues that a change in law regarding the PSG analysis requires reconsideration of his case. In *Matter of A-B- I*, then-Attorney General Barr reversed BIA precedent in holding that "[g]enerally, claims by [noncitizens] pertaining to . . . gang violence perpetrated by non-governmental actors will not qualify for asylum." 27 I. & N. Dec. at 320. In *Matter of L-E-A- II*, then-Attorney General Barr further elaborated upon the particularity requirement of the PSG analysis and described how "[t]he fact that a criminal group—such as a drug cartel, gang, or guerrilla force—targets a group of people does not, standing alone, transform those people into a particular social group." 27 I. & N. Dec. at 582. Both decisions were vacated by now-Attorney General Garland after the BIA's decision but before Chavez-Acosta's motion to reconsider. *Matter of A-B-*, 28 I. & N. Dec. 307, 307 (A.G. 2021); *Matter of L-E-A-*, 28 I. & N. Dec. 304, 304 (A.G. 2021).

A motion to reconsider is used for "the correction of legal or factual errors that occurred in the BIA's original decision." *Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008) (citing 8 U.S.C. § 1229a(c)(6)(C)). One such legal error includes "a change of law." *Yeremin v. Holder*, 738 F.3d 708, 718 (6th Cir. 2013) (quoting *Sunarto v. Mukasey*, 306 F. App'x 957, 960 (6th Cir. 2019)); *see Maraziegos-Morales v. Garland*, Nos. 20-3777/4171, 2021 WL 3140322, at *5 (6th Cir. July 26, 2021).

Accordingly, Chavez-Acosta contends that the IJ and BIA based their denial of his withholding of removal application on the now-vacated caselaw, so reconsideration is warranted post-vacatur, while the government argues that neither the IJ nor BIA relied on these cases. But we need not parse the language of the administrative record to answer the complicated question of whether or not the IJ and BIA relied on *Matter of A-B-* I and *Matter of L-E-A-* II in the original rulings, because neither denied Chavez-Acosta's withholding of removal application solely on PSG grounds.

Distinct from the PSG analysis, the IJ and BIA held that Chavez-Acosta did not provide sufficient evidence to meet the other requirements of withholding of removal, including failure to show that he was likelier than not to face harm upon his return to Mexico and that moving to another area in Mexico would not save him from such future harm, and that he had not provided sufficient corroboration of the past threats and his military service. Chavez-Acosta does not provide contrary evidence today nor did he appeal that initial BIA decision. As the IJ and BIA did not err in making those determinations, any potential reliance on the vacated PSG analysis caselaw would at most amount to harmless error. *See Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) ("But even when the agency's reasoning was inadequate, its decision may be upheld on the basis of harmless error if the petitioner's prospects are otherwise so weak that there is no 'reason to believe that . . . remand might lead to a different result.'" (quoting *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005))). We thus deny the petition for review on the change-in-law argument.

Last, the caselaw discussed above refers solely to claims for asylum and withholding of removal: it relates to PSGs, a requirement of eligibility for these forms of relief. As such, beyond Chavez-Acosta's general competency argument, he does not level additional arguments against

the BIA's and IJ's denial of his claim for protection under CAT, and so we uphold that denial, as well.

### III.  CONCLUSION

For the foregoing reasons, we deny Chavez-Acosta's petition for review.